201 N.J. Super. 588 (1985)
493 A.2d 634
CARL COSTA COLELLA AND DIANE COLELLA, HIS WIFE, PLAINTIFFS,
v.
SAFWAY STEEL PRODUCTS, SCAFFOLDING AND SHORING INSTITUTE AND THOMAS ASSOCIATES, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided February 6, 1985.
*589 Robert W. Delventhal for plaintiffs (Crummy, DelDeo, Dolan, Griffinger and Vecchione, attorneys).
Robert T. Hueston for defendant Safway Steel Products (Hueston, Hueston and Sheehan, attorneys).
William R. Bumgardner for defendants Scaffolding and Shoring Institute and Thomas Associates, Inc. (Bumgardner, Hardin and Ellis, attorneys).
GRIFFIN, J.S.C.
The issue before the court is whether the defense of comparative negligence can be raised when a worker chooses not to use a separate ladder to climb and descend scaffolding erected at the work site or to use the portion of the end frame constructed as a ladder. The court concludes that under these circumstances the defense should be submitted to the jury.
Charles Costa Colella was employed as a pipefitter by E.I. Dupont de Nemours Co. at its Grasseli plant in Linden, New Jersey. He installed and repaired air and steam pipes located both above and underground. Accordingly, his work required the occasional use of scaffolding.
On January 30, 1976 plaintiff was assigned to repair a section of air pipe located approximately 16 feet above the ground. A platform located at the top of a scaffold tower had been erected ten weeks before to provide access to the trouble spot.
The scaffold was supported by two end frames constructed with tubular legs or rungs. Each end frame consisted of two vertical sections. The legs comprising the left vertical section *590 were evenly spaced at 18 inches. The right vertical section consisted of rungs which were spaced approximately 37 inches apart, thus creating large open areas. Eight feet above the ground the legs were then spaced at 18 inches apart to the top of the scaffold.
Plaintiff had used the scaffolding approximately ten times prior to the date of the accident, the last climb occurring two days earlier. Although separate access ladders were available, plaintiff did not use them to reach the platform on those occasions. Instead he would climb the left vertical section of the scaffold frame where the legs were evenly spaced at 18 inches.
On the day of the accident plaintiff observed that his ascent to the platform via the left vertical section was obstructed by overhead pipes. Nevertheless, plaintiff did not call for a separate access ladder. Instead he climbed halfway up the left side of the scaffold until he reached the obstruction. He then switched to the right section where at that point the rungs were evenly spaced at 18 inches and continued to climb to the platform.
He worked for a while and then decided to take a coffee break. Plaintiff started down the right side, but then forgot to switch to the other side as he had previously done on his ascent. When he reached the point where the rungs were spaced farther apart, he lost his footing and fell approximately six feet to the ground. Plaintiff sustained quadriplegia as a result of his injuries.
Plaintiff commenced suit against Safway Steel, the manufacturer of the scaffolding. The strict liability action alleges design defect and failure to warn. The gravamen of the action asserts that the scaffolding is defective because it resembles a ladder and thus invites its use as a ladder when in fact it is not. Plaintiff further contends that defendant failed to warn that a separate access ladder should be used.
Defendant has moved in limine seeking a ruling that the question of plaintiff's comparative negligence be submitted to *591 the jury. The court finds that the facts alleged in this case allow the defense of comparative negligence to be raised.
Although New Jersey recognizes the defense of contributory negligence in strict liability actions, the defense is sharply circumscribed. Thus, the defense is only available when the plaintiff voluntarily and unreasonably encounters a known risk. Ettin v. Ava Truck Leasing, Inc., 53 N.J. 463 (1969); Cintrone v. Hertz Truck Leasing and Rental Service, 45 N.J. 434 (1965); Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979).
The defense is not available, however, when the injured plaintiff is an employee working at an assigned task on an industrial machine. Bexiga v. Havir Manufacturing, 60 N.J. 402 (1972); Suter, supra; Green v. Sterling Extruder Corp., 95 N.J. 263 (1984). The Suter Court reasoned that public policy justifies the total bar of the defense when "an employee engaged at his assigned task on a plant machine as in Bexiga has no meaningful choice." Suter, supra, 81 N.J. at 167. See also Green, supra, 95 N.J. at 271. However, the Court went on to say:
We are not herein passing upon other situations wherein an employee may similarly be held to have had no meaningful choice. [81 N.J. at 167 n. 5].
Thus, the Suter Court has carefully limited the availability of its beneficial ruling to industrial machine situations. It is clear then that under present case law, the defense of contributory negligence is totally barred when a factory worker is operating an industrial machine.
At first blush, plaintiff, undoubtedly a factory worker, appears to come within the Bexiga line of cases. This plaintiff, however, was not operating an industrial machine. Instead he was climbing a scaffold to gain access to his work site, namely the platform. Whether a scaffold is a structure or a machine in the technical or dictionary sense is not relevant to the court's inquiry. Rather, it is the innate nature of the scaffold which is relevant.
*592 The significant difference between the scaffold and the industrial machines in Bexiga, Suter and Green is that the latter involved powered machines which could be activated inadvertently. A worker operating such a powered machine is afforded limited control. A scaffold, on the other hand, is not powered, thereby affording the worker greater control and direction of its use.
The major difference between a powered industrial machine and the scaffold, however, is most relevant to the issue of "meaningful choice," the underlying rationale for the Court's total bar of the contributory negligence defense in industrial settings. A factory worker assigned to work on a particular machine does not have the option of requesting or selecting a different machine. He is directed to operate a specific machine and must do so if he wishes to retain his job.
Here, however, plaintiff had the "meaningful choice" not to climb the scaffold to gain access to the platform. First, as the head pipefitter, he clearly had the authority to supervise all aspects of the job including the decision to use separate access ladders. Second, separate access ladders designed to fit this particular scaffold were a phone call away. Third, it was evident upon immediate visual inspection that the scaffold could not be climbed without crossing over to the portion where the rungs were unevenly spaced.
Further, use of the scaffold was not the ultimate work assignment. Unlike the factory worker assigned to operate a specific machine, this was not a situation where plaintiff had no choice but to climb the scaffold. He was aware separate access ladders were available, knew how to procure them and even used them when they were already present at the site. His choice to climb the scaffold in its obstructed configuration was an exercise of his own judgment.
The defense of contributory negligence cannot be raised unless the conduct constitutes a voluntary and unreasonable encounter of a known risk. That the risk was known to *593 plaintiff is obvious since he observed the obstruction before climbing the scaffold. In addition, two days prior to the accident, plaintiff had climbed the opposite side of the scaffold because it offered a clear continuous path to the platform. On the day of the accident plaintiff chose not to climb the unobstructed side because the scaffold rungs were covered with ice. Thus, prior to the accident it is apparent that he was aware of the risk in climbing the obstructed side of the scaffold.
Finally, plaintiff contends that the left side of the end frame which had rungs spaced 18 inches apart did not comply with proper ladder standards. This, however, is of no import in this case as it had no connection with the accident. Plaintiff on many occasions successfully went up and down this portion of the end frame. The accident occurred because plaintiff chose to go down the portion of the end frame which was clearly not designed for this purpose. He had a clear choice. He could use a separate access ladder or cross over to the left side of the frame to complete his descent.
For the foregoing reasons, the court finds that the question of plaintiff's comparative negligence should be submitted to the jury.