280 N.J. Super. 295 (1994)
655 A.2d 107
DOROTHY THORNTON, PLAINTIFF,
v.
GENERAL MOTORS CORPORATION AND VANESSA ROACH, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided October 27, 1994.
*296 Larry E. Coben, for plaintiff (Coben & Associates, attorneys).
Richard Brockway, for plaintiff (Venturi & Brockway, attorneys).
Thomas F. Tansey, for defendant General Motors Corporation (Morley, Cramer, Tansey, Haggerty & Fanning, attorneys).
William Ricci, for defendant General Motors Corporation (Lavin, Coleman, Finarelli & Gray, attorneys.)
John E. Riehl, for defendant Vanessa Roach (Britt, Riehl, Spudic & Ball, attorneys).
LINTNER, J.S.C.
This court is asked to decide the burden of proof to be imposed upon a plaintiff in a second impact/crashworthy case. Plaintiff, Dorothy Thornton, moves before trial to place the burden *297 of proof for apportioning damages on defendant, General Motors Corporation.
Plaintiff, a New Jersey resident, was a passenger in a 1984 Buick Skyhawk, also known as a "J" car, driven by defendant, Vanessa Roach, which was involved in a head-on type collision with a F-250 Ford pickup truck driven by James Rapheal Davis on July 17, 1988 in North Carolina. Plaintiff has settled with Ms. Roach, accepting her $15,000 policy limit.
It is uncontested that plaintiff sustained a severe spinal cord injury at C-5, C-6 which rendered her a quadriplegic. Plaintiff contends that her paralysis represents an enhancement of her injuries which were caused by a combination of design defects dealing with the length of free spooling in the seat belt retractor system and the manner in which the hood hinges were attached. Plaintiff theorizes that the right rear hood attachment separated, causing the passenger corner of the hood to make contact with the windshield, breaking and deflecting it inward, striking plaintiff in the head as she came forward immediately before the seat belt retractor lock engaged.
Defendant disagrees with plaintiff's theory of the collision, contending that the Ford pickup truck rode up on to the hood of the Buick striking the A pillar, the structural support column that separates the front passenger door from the right corner of the windshield, which in turn deformed rearward, coming in contact with the plaintiff's head as she was forced forward. As such, it is defendant's position that all plaintiff's injuries were a result of the violence of the collision, not due to any failure of the hood attachment or by any other alleged design defect in the "J" car.
Both parties in pretrial motions seek a determination of the burden of proof to be imposed with regard to apportionment of damages. Defendant, relying on Huddell v. Levin, 537 F.2d 726 (3rd Cir.1976), urges the court to place the burden on plaintiff to prove what injuries would have been sustained had there been no design defect, in order to be entitled to a jury determination on the issue of enhanced injuries. Plaintiff argues that Huddell is no *298 longer the law of this state because the recent decisions in Dafler v. Raymark Indus., Inc., 259 N.J. Super. 17, 611 A.2d 136 (App. Div. 1992), aff'd o.b., 132 N.J. 96, 622 A.2d 1305 (1993), and Scafidi v. Seiler, 119 N.J. 93, 574 A.2d 398 (1990), although not second impact/crashworthy cases, placed the burden of proof regarding apportionment of damages on the defendant.
Two lines of cases have developed over the years concerning the allocation of the burden of proving apportionment of damages in enhanced injury/crashworthy product liability matters. While Huddell is one of the leading cases representing the point of view shared by several jurisdictions that place the burden of apportionment of damages on the plaintiff, many other jurisdictions impose the burden of apportionment on the defendant. See Shipp v. General Motors Corp., 750 F.2d 418 (5th Cir.1985); McLeod v. American Motors Corp., 723 F.2d 830 (11th Cir.1984); Mitchell v. Volkswagenwerk, AG, 669 F.2d 1199 (8th Cir.1981); Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968); Fouche v. Chrysler Motors Corp., 103 Idaho 249, 646 P.2d 1020 (1982); Lahocki v. Contee Sand & Gravel Co., 41 Md. App. 579, 398 A.2d 490 (1979), rev'd on other grounds, 286 Md. 714, 410 A.2d 1039 (1980); Lee v. Volkswagen of America, Inc., 688 P.2d 1283 (Okla. 1984).
Huddell, supra, 537 F.2d 726, involved a rear end type collision on the Delaware Memorial Bridge. The Huddell vehicle was stopped as a result of running out of gas when it was struck in the rear at fifty to sixty miles per hour by George Levin. Benjamin Huddell was forced rearward in his seat by the impact striking his head on the driver's side headrest at a reconstructed speed of ten miles per hour. With the exception of an extensive fracture to the occipital region of the skull which caused his death, Dr. Huddell sustained superficial injuries. Suit was instituted naming General Motors Corporation as one of the defendants, alleging that the design of the head rest was defective in that it exposed Dr. Huddell's head to a sharp metal edge, which in turn was a proximate cause of his death.
*299 The fact pattern in both Huddell and the case at bar represent a typical enhanced injury/second impact scenario where the occupant of a motor vehicle is severely injured by coming into contact with a portion of the vehicle which is either part of or intrudes into the occupant's compartment. The focus in these types of product liability actions, where the crash-worthiness of a motor vehicle is called into question, is the enhanced or add-on injuries which are sustained as a result of a second instantaneous collision occurring usually within the vehicle between an occupant and a portion of the vehicle.
In Huddell, Court of Appeals, in an attempt to predict how the New Jersey Supreme Court would decide a similar case, required the plaintiff to meet a four part burden of proof in enhanced injury/second collision type of cases. Specifically, plaintiff was required to prove: (1) a defect in design; (2) an alternative safer design, practical under the circumstances; (3) the extent of enhanced injuries attributed to the defect in design such that, had there been no defect, they would not have been sustained; and (4) those injuries that would have occurred, had a safer, more practical alternative been utilized. The fourth element of the burden of proof imposed by Huddell deals specifically with apportionment of damages and, in effect, requires the plaintiff to prove the negative, i.e. those injuries that would have occurred had there been no defect. While both parties agree that the first three elements fall within plaintiff's burden, they disagree as to the fourth.
The only state court case dealing specifically with the burden of proof regarding apportionment of damages in enhanced injury/second impact cases is Mclaughlin v. Nissan Motor Corp., 267 N.J. Super. 130, 630 A.2d 857 (Law Div. 1993). There the trial court followed the decision in Huddell and placed the burden of proof of apportioning damages on the plaintiff. While a published decision by another trial court is not to be treated lightly, in the absence of appellate authority, it is not binding on another trial court. Goldberg v. Traver, 99 N.J. Super. 103, 107, 238 A.2d 695 *300 (Ch.Div. 1968); Ferraro v. Ferro Trucking Co., 72 N.J. Super. 519, 179 A.2d 74 (Law Div. 1962). Likewise, a determination by the Circuit Court of Appeals as to what law would be followed by the New Jersey Supreme Court is not binding on a New Jersey trial court but must be given due respect. See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 80, 577 A.2d 1239 (1990); Small v. Department of Corrections, 243 N.J. Super. 439, 444, 579 A.2d 1263 (App.Div. 1990).
Some insight as to whether our Supreme Court would follow the rule announced by Huddell is provided by Judge Baime in Crispin v. Volkswagenwerk, AG, 248 N.J. Super. 540, 591 A.2d 966 (App. Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991). Crispin involved an appeal of a $4,800,000 verdict in favor of the plaintiff who was paralyzed in a multi-car collision. The case involved a claim for enhanced injuries as a result of a second impact caused by an "ejector seat", a design defect resulting in the collapse of the front seat back, causing the occupant to be hurled rearward toward the engine compartment in a rear end collision.
The trial court in Crispin followed Huddell and required the plaintiff to prove those injuries which would have been sustained had there been no defect. Because the plaintiff in Crispin prevailed at the trial level, the issue of imposition of the burden of apportionment of damages was moot on appeal. However, Judge Baime offered the following criticism of Huddell by way of a footnote:
A rule placing upon the defendant the burden of proof with respect to the apportionment of damages may be more in line with our Supreme Court's recent decision in Scafidi v. Seiler, 119 N.J. 93, 111-113, 574 A.2d 398 (1990). See also Fosgate v. Corona, 66 N.J. 268, 272-273, 330 A.2d 355 (1974). However, this issue is not before us and we need not resolve it.
[Crispin, supra, 248 N.J. Super. at 569 n. 1, 591 A.2d 966.]
Fosgate v. Corona, 66 N.J. 268, 330 A.2d 355 (1974), is the definitive case dealing with the issue of apportionment of damages. Fosgate was a medical malpractice case in which Mary Fosgate had been treated conservatively for chronic coughing by the defendant from the early part of 1963 through July 1969, when she *301 was involved in an automobile accident. After being cared for at the hospital for the injuries sustained in the accident, it was discovered that Mrs. Fosgate was suffering from the advanced stages of tuberculosis.
Specifically, Fosgate held that a defendant in a malpractice action should incur the risk of being responsible for all of plaintiff's damages unless the defendant meets the burden of segregating recoverable damages from those solely attributed to the preexisting condition. Id. at 272-273, 330 A.2d 355. In reaching its determination, the Supreme Court in Fosgate recognized the general principle that an otherwise innocent plaintiff should not be required to establish those damages attributed solely to malpractice, or other tortious conduct, in situations involving the aggravation of a preexisting condition. Rather, the burden of proof should be shifted to the culpable defendant who should be held responsible for all the damages, absent a showing by the defendant that those damages for which the defendant is responsible are capable of some reasonable apportionment and what those damages are.
Scafidi v. Seiler, supra, 119 N.J. 93, 574 A.2d 398, dealt with apportionment of damages in the context of increased risk/lost chance of survival medical malpractice cases. After dealing with the necessary modification of proof required to establish proximate cause in such cases, the court in Scafidi focused on the issue of apportionment of damages, holding that a defendant seeking to apportion damages must bear the burden of proving that the plaintiff's ultimate condition, for which damages are sought, was solely attributed to the preexisting condition regardless of the defendant's negligence. Id. at 113-14, 574 A.2d 398. The Supreme Court also held that the jury, based upon the evidence presented, should be asked to determine the likelihood, on a percentage basis, that the plaintiff's condition would have occurred even if the defendant's treatment was faultless, in order to permit the court to thereafter mold the verdict to reflect the correct apportionment of damages.
*302 The principles set forth in Scafidi are equally applicable to the case at bar. Like Scafidi the plaintiff in the within matter is innocent from the standpoint that there is no claim asserting that the enhanced injuries were sustained as a result of improper conduct on the part of the plaintiff.[1] The underlying collision in a crashworthy case bears the same relationship to the defect causing enhanced injury as the preexisting condition bears to the negligent conduct of the defendant in a lost chance of survival case. In each situation the defendant's tortious conduct worsens, or adds to the status of the plaintiff's condition whether it be initiated by a preexisting condition or an underlying collision. Logically, if a defendant in a lost chance case is required to prove those damages that would have resulted solely from a preexisting condition, notwithstanding the negligent care provided, the defendant in an enhanced injury/crashworthy case should be required to show those injuries that would have solely resulted from the underlying collision/irrespective of the defect in safety design.
Apportionment of responsibility and damages are favored in our law. The party liable should be limited to respond for those damages actually caused, so long as they are capable of apportionment, rather than be required to absorb the entire burden, Dafler v. Raymark Indus., supra, 259 N.J. Super. at 35, 622 A.2d 1305. It follows that the principle set forth in Dafler *303 that "the burden of proving that the harm is capable of apportionment is on the party seeking it" is equally applicable here, where it is the defendant's contention that the injuries suffered by the plaintiff are solely attributed to the underlying collision notwithstanding the alleged design defect. Id. at 29, 622 A.2d 1305.
Following the rationale of Fosgate, Scafidi and Dafler, the burden of apportionment in a crashworthy/enhanced injury case must be imposed on the defendant, not the plaintiff. The plaintiff need not prove the specific injuries which would have occurred from the crash had the vehicle been safe but, need only prove the enhanced injuries that resulted from the defect such that they would not have occurred had the alternate safety design been utilized.
Where, as here, the impropriety of the plaintiff's conduct is not causally related to the enhanced injuries, it is the defendant's burden to show that the injuries resulting from the underlying collision, irrespective of the alleged defect, are capable of apportionment and what those injuries are.
As such, plaintiff's motion is granted, the burden of apportionment of damages is imposed upon defendant, and plaintiff's burden is confined to proving (1) the defect in design, (2) that a safer alternative design was available and practicable under the circumstances, and (3) that the defect was a proximate cause of the injuries such that they would not have occurred had the safer alternative design be utilized.
NOTES
[1] Waterson v. General Motors Corp., 111 N.J. 238, 544 A.2d 357 (1988), dealt with a defect in the right rear axle of a motor vehicle which caused the plaintiff to lose control, striking a utility pole. The defense alleged that the plaintiff was negligent in part due to her failure to wear a seat belt, which failure caused her injuries as a result of a second collision within the motor vehicle.

While the Court in Waterson did not decide which party has the burden of apportionment, it would not be inconsistent with the holding herein to place the burden of apportionment on the plaintiff with regard to enhanced injuries resulting from the negligent failure to wear a seat belt, in light of the fact that the plaintiff is not without fault insofar as the cause of the enhanced injuries are concerned. The significant issue is whether the plaintiff's tortious conduct is related to the secondary impact within the car rather than the underlying collision.