291 N.J. Super. 530 (1996)
677 A.2d 1144
JOSEPH SCHWARZE, PLAINTIFF-RESPONDENT,
v.
CATHERINE MULROONEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 21, 1996.
Decided June 25, 1996.
*533 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
John D. Brady argued the cause for appellant (Stephen E. Gertler, attorney; Mr. Brady, on the brief).
John R. Connelly argued the cause for respondent (Drazin & Warshaw, attorneys; Mr. Connelly, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiff was injured when his truck collided with defendant's automobile. The impact caused plaintiff's head to be thrown violently forward and then backward. The momentum of the crash also caused a generator plaintiff had left unsecured in the truck's bed to penetrate the cab window and strike the back of his head. Defendant acknowledged that she was partially at fault in causing the accident. However, she contended that plaintiff's negligence in failing to fasten the generator to the truck's bed liner substantially contributed to the injuries he sustained. The trial judge concluded that plaintiff's negligent failure to secure the generator could not be considered a proximate cause of the accident and, consequently, refused to submit the issue to the jury. The jury returned a substantial verdict in plaintiff's favor. Defendant appeals. The principal question concerns whether comparative *534 negligence principles are applicable to "second collision" injuries  those injuries not directly caused by the crash alone and which could have been avoided had the plaintiff exercised reasonable care for his or her own safety.

I.
Plaintiff was employed as a mechanic by Penske Leasing Company. His duties included repairing leased vehicles whenever they required service. On the morning of the accident, plaintiff arrived at work and was informed by his supervisor that a leased vehicle in Middlesex had a dead battery. Plaintiff gathered his tools and placed them in a pickup truck used by Penske employees to make service calls. This truck was the only service vehicle available at Penske's site. Located in the bed of the truck was a gas-powered motor/generator used for jump starting batteries on heavy commercial vehicles. The generator was approximately three feet by three feet and weighed between 400 and 500 pounds. Normally, the generator was fastened to the truck's bed liner to prevent it from moving while the vehicle was in motion. On this particular day, however, it was not attached, having recently been removed, repaired, and placed in the back of the truck.
At a pretrial hearing, conflicting evidence was presented as to whether plaintiff attempted to correct the problem concerning the unsecured generator. Plaintiff testified that prior to leaving on the service call he noticed that the generator was not secured to the truck bed. He claimed that he brought the matter to the attention of his supervisor, who directed him to proceed with the service call. Plaintiff testified that he left the Penske site without securing the generator because of his supervisor's order. He also claimed that Penske was obligated by contract to either repair a dysfunctional vehicle within two hours or provide a replacement.
Plaintiff offered a markedly different version in his deposition testimony. Specifically, plaintiff testified that he noticed the generator was not secured, took no steps to fasten it although he could have done so, and had no "special reason" for failing to take *535 this course. Plaintiff never mentioned informing his supervisor about the problem. Plaintiff also stated that there was no specific deadline by which he had to arrive at the disabled vehicle and that he anticipated it would only take about fifteen minutes to jump start it.
In any event, while en route to the location of the disabled vehicle, plaintiff turned onto Cindy Court, a narrow street that did not permit passage of two abreast vehicles. He was travelling approximately twenty-five miles per hour. One of the cars parked along the side of the street belonged to defendant, an elementary school teacher living at her parents' home. Defendant entered her vehicle, checked over her left shoulder to determine the existence of oncoming traffic, and pulled her car across the road in order to make a "K-turn." When defendant entered the street, plaintiff was approximately five feet from defendant's car. Plaintiff applied his brakes, causing the pickup truck to lurch to the left and strike the driver's side doors of defendant's automobile. At the moment of impact, plaintiff's head was thrown forward and then back again without contacting any of the truck's interior surfaces. The generator in the truck's bed, however, was thrown forward by the momentum of the crash and penetrated the cab window, striking plaintiff in the back of the head. Plaintiff's head was thrown forward a second time, but he again avoided contact with any part of the truck's interior. Plaintiff was wearing his seat belt at the time of the collision.
Both parties exited their vehicles, verified that neither of them was hurt, and exchanged information. A police officer called to the scene issued a summons to defendant for careless driving, and she subsequently pled guilty to that charge in municipal court. The officer specifically asked plaintiff if he desired an ambulance. Plaintiff declined and returned to work. Later that day, he complained of pain in his neck and was sent to a physician for treatment.
The parties each produced an expert to testify regarding the extent, severity, and permanence of plaintiff's injuries. It was undisputed that plaintiff was diagnosed as suffering from a herniated *536 disc between the fifth and sixth cervical vertebrae. This injury caused him to experience pain in his neck and shoulders, numbness in his right arm, and limited head motion. After physical therapy and other more conservative treatments failed to relieve his symptoms, plaintiff underwent surgery to remove some of the herniated disc material, fuse the two vertebrae together, and relieve some of the pressure on the impinged nerves. Due to his treatment and recovery, plaintiff missed nearly a year of work. Neither expert was able to determine the extent to which the severity of plaintiff's injuries was enhanced by reason of the movement of the generator.
As we noted earlier, the trial judge denied defendant's request to charge the jury that it could consider plaintiff's negligence in failing to secure the generator in assessing the parties' relative fault. The trial judge's decision on the subject is not a model of clarity. At the conclusion of the pretrial hearing, the judge found that plaintiff lacked the "flexibility" to refuse to perform the work demanded by his employer and, thus, could not be contributorily negligent as a matter of law. In subsequent proceedings, the judge based her decision upon the absence of testimony that plaintiff knew of the hazards posed by failing to secure the generator to the truck bed. The judge further reasoned that plaintiff's failure to fasten the generator could not possibly have contributed to the happening of the accident.[1] In any event, the jury found that defendant was seventy-five percent at fault and plaintiff was twenty-five percent at fault. The jury awarded plaintiff $30,000 for lost wages, $32,288 for medical expenses, and $180,000 for pain and suffering. Thereafter, the court molded the verdict and entered judgment in the amount of $181,716.

II.
Preliminarily, we conclude the trial judge erred by finding as a matter of law that plaintiff's employment environment foreclosed *537 a contributory negligence defense. Our Supreme Court has held that an industrial employee engaged at his assigned task on a plant machine cannot be barred from recovery, nor compelled to suffer the reduction of any favorable verdict, by reason of his contributory fault. Johansen v. Makita USA, Inc., 128 N.J. 86, 94, 607 A.2d 637 (1992); Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 167-68, 406 A.2d 140 (1979). In the context of product liability cases arising out of defective factory machinery, the Court has said that, "[b]ecause an industrial employee has no choice but to use the product to complete his or her assigned task, `the law does not accept the employee's ability to take care of himself as an adequate safeguard' of the interests society seeks to protect." Johansen v. Makita USA, Inc., 128 N.J. at 94-95, 607 A.2d 637 (quoting Suter v. San Angelo Foundry & Mach. Co., 81 N.J. at 167, 406 A.2d 140). Although this principle was originally thought to be confined to strict liability cases, the Court has more recently extended application of the doctrine to causes of action based in negligence. Green v. Sterling Extruder Corp., 95 N.J. 263, 271-72, 471 A.2d 15 (1984); see also Bexiga v. Havir Mfg. Corp., 60 N.J. 402, 412, 290 A.2d 281 (1972).
We need not determine whether the rule barring the defense of contributory fault should be applied in settings other than the factory, compare Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 400-02, 591 A.2d 643 (App.Div.), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991) with Colella v. Safway Steel Prods., 201 N.J. Super. 588, 591-93, 493 A.2d 634 (Law Div. 1985), or to work-related injuries not caused by a defective product. See Kane v. Hartz Mountain Indus., 278 N.J. Super. 129, 150, 650 A.2d 808 (App.Div. 1994), aff'd o.b., 143 N.J. 141, 669 A.2d 816 (1996). The Court has expressly declined to "pass[] upon other situations wherein an employee may similarly be held to have had no meaningful choice" but to proceed with a task assigned by his or her employer. Suter v. San Angelo Foundry & Mach. Co., 81 N.J. at 167 n. 5, 406 A.2d 140. Here, conflicting evidence was presented concerning whether plaintiff had the option of securing the generator to the truck bed before leaving the Penske site. *538 The jury could reasonably have found from the evidence that plaintiff had a "meaningful choice" whether to ameliorate the risk. The trial judge intruded upon the jury's domain by deciding that factual issue.

III.
We nevertheless perceive no need to reverse the Law Division's judgment. This case involves two impacts, each of which potentially caused plaintiff's injuries. The first impact was the collision between plaintiff's and defendant's vehicles, which caused plaintiff's head to move forward rapidly and snap back. The second impact was the striking of plaintiff's head by the generator, which caused it to snap forward and backward a second time. Plaintiff's failure to secure the generator to the truck bed did not contribute to the cause of the collision, but it could very well have contributed to his injuries. At issue is the extent to which comparative negligence principles should be applied in these circumstances.
Resolution of this question requires consideration of two separate but related common law doctrines. First, the doctrine of contributory negligence barred a claimant from recovering any damages where his negligence contributed to the happening of the accident. The doctrine's underlying thesis was that every person has an obligation to exercise reasonable care for his or her own safety. A corollary to this premise was that any fault on the part of a claimant, however slight, precluded him or her from obtaining recovery. See Ostrowski v. Azzara, 111 N.J. 429, 436, 545 A.2d 148 (1988). Second, the doctrine of avoidable consequences provided that a plaintiff who had suffered an injury as the proximate result of a tort could not recover any portion of the harm that by the exercise of ordinary care he or she could have avoided. Id. at 437, 545 A.2d 148. Unlike contributory negligence, the law of avoidable consequences usually was applied to careless conduct on the part of the plaintiff occurring after the defendant's tortious act had been committed. Id. at 438, 545 A.2d 148. The public policy undergirding the rule was "`that persons should be discouraged *539 from wasting their resources, both physical [and] economic.'" Id. at 437-38, 545 A.2d 148 (quoting Restatement (Second) of Torts § 918 at 500, comment a).
The Comparative Negligence Act (N.J.S.A. 2A:15-5.1 to 5.4) was designed to ameliorate the harshness of the common law contributory negligence doctrine. Comparative negligence, thus, grew out of an "equitable desire to mitigate the unfairness associated with the total bar to recovery posed by common law contributory negligence." Suter v. San Angelo Foundry & Mach. Co., 81 N.J. at 161, 406 A.2d 140. The Act bars recovery if the claimant's negligence exceeds that of the person against whom recovery is sought. N.J.S.A. 2A:15-5.1. It further provides that "[a]ny damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering." Ibid. The Act is not specific in relating avoidable consequences to comparative percentages of fault. Stated somewhat differently, the Act is silent respecting whether, or to what extent, a claimant's fault, which did not contribute causally to the happening of the accident but which enhanced the severity of the claimant's injuries, is to be considered in determining monetary damages. We are not without guidance, however, because in other contexts our Supreme Court has "sensibly harmonize[d] the doctrines by using a measure of the fault that enhanced the damages to apportion them." Ostrowski v. Azzara, 111 N.J. at 446, 545 A.2d 148.
In Waterson v. General Motors Corp., 111 N.J. 238, 544 A.2d 357 (1988), the Court held that a plaintiff-motorist's monetary recovery may be reduced due to his or her negligent failure to wear a seat belt where the defendant introduces satisfactory evidence indicating this omission increased the severity of the resulting injuries. Id. at 264, 270, 544 A.2d 357. The Court observed that the plaintiff's failure to wear a seat belt cannot contribute causally to the happening of an accident and, thus, should have no effect on his or her recovery for the first impact injuries sustained. "Consequently, the relevant inquiry is not whether the failure to use a seat belt contributed to the cause of *540 the accident but whether the nonuse of a seat belt contributed to [the] plaintiff's injuries." Id. at 264, 544 A.2d 357. The Court reasoned that because the failure to wear a seat belt had no bearing on the defendant's responsibility for causing the accident, it could not bar the plaintiff's recovery even if his or her fault in failing to wear the seat belt exceeded fifty percent of the total fault for the second impact injuries. Id. at 268, 544 A.2d 357. Such a bar would confer an intolerable windfall upon a negligent driver or careless manufacturer. Id. at 266, 544 A.2d 357. The Court thus adopted a complex formula to guide juries in assessing the effect of a plaintiff's failure to wear a seat belt. We need not describe that formula in detail here. It is enough to say that the objective is to "isolate the second-collision or seat-belt damages and determine the value of those damages." Id. at 272, 544 A.2d 357.
The fundamental principle underlying Waterson is that apportionment of damages is appropriate "`where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues.'" Id. at 253, 544 A.2d 357 (quoting Restatement (Second) of Torts § 465 Comment c (1965)); see also Ostrowski v. Azzara, 111 N.J. at 438-39 & n. 2, 545 A.2d 148 (noting that, although avoidance of consequences usually involves negligent conduct by plaintiff following the accident, Waterson provides an example of carelessness that precedes an injury and serves to aggravate it). Also significant to its holding is the Court's admonition that in order to justify submission of the defense to the jury the defendant must present evidence indicating that the failure to wear a seat belt exacerbated the plaintiff's injuries. Waterson v. General Motors Corp., 111 N.J. at 270, 544 A.2d 357. Subsumed within this duty is the obligation to produce "evidence sufficient to allow a jury to apportion plaintiff's damages." Statham v. Bush, 253 N.J. Super. 607, 614, 602 A.2d 779 (App.Div. 1992). Placing upon defendant the ultimate burden of demonstrating which injuries are attributable to which impact is consistent with New Jersey decisions *541 regarding apportionment in other tort law contexts. See Anderson v. Picciotti, 144 N.J. 195, 210-11, 676 A.2d 127 (1996); Scafidi v. Seiler, 119 N.J. 93, 113-14, 574 A.2d 398 (1990) (defendant has burden of proving apportionment in increased risk/lost chance of survival medical malpractice cases); Ostrowski v. Azzara, 111 N.J. 429, 446-47, 545 A.2d 148 (defendant physician bears burden of demonstrating that post-treatment negligent conduct exacerbated patient's condition in medical malpractice case and of proving the damages that were avoidable); Fosgate v. Corona, 66 N.J. 268, 272-73, 330 A.2d 355 (1974) (defendant in medical malpractice case has burden of segregating harm caused by physician's misconduct from that attributable solely to preexisting condition of patient); Thornton v. General Motors Corp., 280 N.J. Super. 295, 303, 655 A.2d 107 (Law Div. 1994) (defendant has burden of apportioning damages in crashworthiness/secondary impact product liability case). But see Crispin v. Volkswagenwerk AG, 248 N.J. Super. 540, 568-71, 591 A.2d 966 (App.Div.), certif. denied, 126 N.J. 385, 599 A.2d 162 (1991); Thornton v. General Motors Corp., 280 N.J. Super. at 302 n. 1, 655 A.2d 107; McLaughlin v. Nissan Motor Corp., 267 N.J. Super. 130, 630 A.2d 857 (Law Div. 1993). Normally, apportionment of damages requires expert testimony. See Statham v. Bush, 253 N.J. Super. at 613-14, 602 A.2d 779; Dunn v. Durso, 219 N.J. Super. 383, 388-89, 530 A.2d 387 (Law Div. 1986); Barry v. The Coca Cola Co., 99 N.J. Super. 270, 274-75, 239 A.2d 273 (Law Div. 1967).
While we recognize that this case differs in its specifics from Waterson, we view the core issue as essentially the same. Plaintiff's antecedent negligent conduct did not contribute to the cause of the accident, but perhaps enhanced the severity of the injuries he sustained. Nevertheless, the simple and overriding fact is that defendant failed to present evidence sufficient to enable the jury to apportion damages. In light of this failure of proof, defendant was bound to "take plaintiff as [s]he [found] him." Frame v. Kothari, 212 N.J. Super. 498, 501, 515 A.2d 810 (Law Div. 1985), aff'd in part and rev'd in part, 218 N.J. Super. 537, 528 A.2d 86 (App.Div. 1987), aff'd, 115 N.J. 638, 560 A.2d 675 (1989). While we *542 disagree with the trial judge's reasons, we find no error in her ruling that was capable of producing an unjust result. R. 2:10-2. The question of plaintiff's fault in failing to secure the generator to the truck bed was properly not submitted to the jury because no evidence was presented isolating the second collision injuries he sustained.

IV.
Defendant's remaining arguments clearly lack merit and do not require extended discussion. R. 2:11-3(e)(1)(E). There is no basis for defendant's attack upon the trial court's instructions relating to her violation of traffic laws. The court's charge comported with settled principles. See Eaton v. Eaton, 119 N.J. 628, 642-43, 575 A.2d 858 (1990); Waterson v. General Motors Corp., 111 N.J. at 263, 544 A.2d 357. We also reject defendant's claim that the award for pain and suffering was excessive. There was ample testimony from which the jury could reasonably have found that plaintiff's injuries were both severe and permanent. The award of damages was reasonable under the circumstances. Baxter v. Fairmont Food Co., 74 N.J. 588, 379 A.2d 225 (1977).
Affirmed.
NOTES
[1] The jury was permitted to consider the question of plaintiff's comparative negligence in failing to make reasonable observations while driving his vehicle.