767 A.2d 526

BERNARD MAYLES, JR. AND BRIDGET MAYLES, HIS WIFE, PLAINTIFFS–APPELLANTS, v. DAVID J. WENTLEJEWSKI AND FREEHOLD NISSAN, INC., DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted February 7, 2001—Decided March 1, 2001.

Before Judges KING, LEFELT and AXELRAD.

*Drazin & Warshaw,* attorneys for appellants (*Roy D. Curnow,* on the brief).

*Ciarrocca & Ciarrocca,* attorneys for respondents (*Mark P. Ciarrocca,* on the brief).

The opinion of the court was delivered by

KING, P.J.A.D

## I

Plaintiff appeals the trial judge's order granting plaintiff's motion for additur, increasing the jury's total automobile accident damage award from $6500 to $21,500. But the judge also reduced the $21,500 award to reflect the jury's 74% calculation of plaintiff's contribution to his own injuries because he did not use his seat belt and the jury's finding of plaintiff's 49% contributory or comparative fault as a driver in causing the accident. The resulting molded judgment was $2850.90 which we affirm.

On this appeal, plaintiff raises these three issues.

I   THE COURT ERRED IN CHARGING *N.J.S.A.* 39:4-90 AS IT APPLIED TO BOTH PLAINTIFF AND DEFENDANT.

II  THE COURT INCORRECTLY MOLDED THE JURY VERDICT.

III THE TRIAL JUDGE'S MISCALCULATION OF DAMAGES CANNOT BE CURED AND PLAINTIFF MUST GET A NEW TRIAL AS TO DAMAGES.

## II

This case arises out of a motor vehicle accident that occurred in Freehold, Monmouth County on March 21, 1995. At the time, plaintiff Mayles was age thirty-six and worked as a painter and a semipro league basketball referee. Defendant Wentlejewski was employed by defendant Freehold Nissan, Inc. (Freehold), delivering parts to body shops and stores.

Just before the accident, Wentlejewski was operating a Freehold-owned truck on route to Bill's Body Works in the center of Freehold. He was traveling along Waterworks Street, intending

to make a left turn onto Court Street. He had activated his left directional signal. While about 150 feet from the intersection, Wentlejewski first noticed plaintiff, who was traveling north on Rhea Street. Wentlejewski was traveling twenty-five miles per hour.

There was a white line where Rhea Street met the intersection, indicating a stop for those traveling on Rhea Street. As plaintiff approached the intersection, he slowed down from about thirty miles per hour to twenty-five miles per hour, but did not stop as he came to the white line. Thinking that Wentlejewski was stopping, plaintiff proceeded into the intersection with the intent of turning left, or veering left, onto Court Street. Plaintiff did not activate his directional signal.

Wentlejewski, while approximately fifty feet from the intersection, realized there would be an impact and applied his brakes. However, the front center of his truck struck the left side of plaintiff's vehicle, after plaintiff also applied his brakes.

Plaintiff, who was not wearing a seatbelt, was thrown to the left. His knees hit the dashboard, and his head hit the metal above the driver-side window. His arm and left rib hit the door, and his left calf hit the emergency brake and was punctured.

At the hospital, plaintiff complained of pain in his head, hip and right foot, and a cut on his left calf. X-rays were taken of his head, neck, left hip, leg, knees, left ribs, and right foot. No fractures were found. Plaintiff was given crutches and released.

On March 28, 1995, a week after the accident, plaintiff first sought treatment with Dr. Husserl. He complained of neck pain, rib pain, and pain in his right foot and ankle. Dr. Husserl prescribed physical therapy for plaintiff's neck and also recommended that he temporarily stop working because of the crutches he was using.

On May 2, 1995 plaintiff returned to Dr. Husserl for treatment. Plaintiff was still experiencing great discomfort, and, in June 1995, Dr. Husserl instructed plaintiff to temporarily discontinue referee-

ing. A CT scan revealed that a piece of bone in plaintiff's right foot had become lodged in a joint surface. Dr. Husserl removed this bone fragment on October 13, 1995. After surgery, plaintiff underwent a six-week period of rehabilitation, during which he used crutches and a walking boot.

Plaintiff made a post-operative visit to Dr. Husserl on February 27, 1996. Because he was still experiencing discomfort, the doctor again told him to stop refereeing. At trial, Dr. Husserl testified that he believes plaintiff's discomfort resulting from the accident will last his lifetime.

Dr. Harold Alexander, a biomedical engineer, qualified as an expert in seatbelt performance, testified for the defense that in collisions which occur where cars are traveling below thirty-five miles per hour, seatbelts are generally effective in preventing injury. He testified that occupants wearing seatbelts in accidents such as in this case would not hit anything within the vehicle and would suffer only abrasions, bruising and possible cervical sprain. Absent significant intrusion into the occupant compartment, injury to the lower extremities would not result.

The jury returned a verdict finding defendant 51% negligent and plaintiff 49% negligent for causation of the accident. Total damages in the amount of $6500 were awarded to plaintiff. The jury further determined that if plaintiff had been wearing a seatbelt, his damages would have been only $1700. Seatbelt damages were found to total $4800. The jury also answered this specific interrogatory: "13. Plaintiff's negligence for not using a seat belt (from 1% to 100%)" was "100%." On August 13, 1999 Judge Chaiet entered judgment awarding plaintiff $867. Plaintiff filed a notice of motion for a new trial.

After oral argument, Judge Chaiet granted an additur and ordered that the "damage award shall be amended to $21,500 which shall be reduced by the jury's *pro rata* seat belt damage of 74% and also by the jury's finding of 49% liability attributable to plaintiff resulting in a judgment against defendant of $2850.90." Defendant consented to this judgment and plaintiff now appeals.

## II

Plaintiff first contends that the judge erred by not charging the jury that plaintiff had the right of way and that defendant Wentlejewski was required to yield. Specifically, plaintiff wanted the judge to instruct the jury that *N.J.S.A.* 39:4–90 applied to Wentlejewski only, and not to plaintiff. *N.J.S.A.* 39:4–90, *Right of way at intersections,* provides:

> The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection. When 2 vehicles enter an intersection at the same time the driver of the vehicle on the left shall yield the right of way to the driver of the vehicle on the right.
>
> The driver of a vehicle within an intersection intending to turn to the left shall yield to a vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but the driver having so yielded, and having given a signal when and as required by law, may make the left turn; and other vehicles approaching the intersection from the opposite direction shall yield to the driver making the left turn.

Initially, the judge was going to instruct the jury that this provision applied to defendant Wentlejewski only. However, he reasoned that, due to the "unique configuration of this intersection", he had to charge the jury generally with respect to the statutory provision, allowing them to decide which party had an obligation to comply.

"The ultimate question is whether, taking the charge as a whole and reading it in context, the jury was misled or inadequately informed." *Mehlman v. Mobil Oil Corp.,* 153 *N.J.* 163, 194, 707 *A.*2d 1000 (1998) (*citing Navarro v. George Koch & Sons, Inc.,* 211 *N.J.Super.* 558, 570–71, 512 *A.*2d 507 (App.Div.), *certif. denied,* 107 *N.J.* 48, 526 *A.*2d 138 (1986)). No party is entitled to have the jury charged in his or her own words. All that is necessary is the charge as a whole be accurate. *State v. Thompson,* 59 *N.J.* 396, 411, 283 *A.*2d 513 (1971); *Kaplan v. Haines,* 96 *N.J.Super.* 242, 251, 232 *A.*2d 840 (App.Div.1967), *aff'd,* 51 *N.J.* 404, 241 *A.*2d 235 (1968), *overruled on other grounds, Largey v. Rothman,* 110 *N.J.* 204, 206, 540 *A.*2d 504 (1988). This court must uphold the jury instructions, even if erroneous, as long as they are "incapable of producing an unjust result or prejudicing substantial rights."

*Fisch v. Bellshot,* 135 *N.J.* 374, 392, 640 *A.*2d 801 (1994) (*citing Terminal Constr. Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Auth.,* 18 *N.J.* 294, 315, 113 *A.*2d 787 (1955)).

In the case before us, defendant was clearly proceeding to make a left turn, as his directional signal was activated and he had entered the intersection. Similarly, even though his directional signal was not activated, the record indicates that plaintiff was also proceeding to make a left turn. In fact, plaintiff's own expert, Dennis O'Day, an expert in the field of accident reconstruction, agreed on cross-examination that plaintiff was "in the process of turning left" when the accident occurred. Because it appears that both parties were attempting to turn left at an unusually configured intersection, *N.J.S.A.* 39:4–90 could be found by a jury to apply to both. In spite of the fact that plaintiff's counsel stressed his client only admitted to veering left at the intersection to avoid collision, the jury could have reasonably concluded, based on the expert's testimony and the circumstances of the collision, that plaintiff was, in fact, turning left. As Judge Chaiet stated, "They can conclude, under this particular charge, that the defendant had the greater burden. But I[am] not deciding it for them...." We find no error on this point.

IV

We turn to the damage issue. The defendant did not challenge the additur from $6500 to $21,500 but accepted this modified judgment. The plaintiff challenges the judge's reduction of the damages by the jury's *pro rata* seat belt damage finding of 74% of overall damages—$4800 for seat-belt damages over $6500 for total damages—resulting in a net amount, after additur and reduction for 49% comparative negligence, of $2850.90 or—51% of the total of non-seat belt damages. We conclude that the judge's calculation of plaintiff's damages after additur was correct, accepting the ratio of seat-belt damages to total damages as established by the jury: 74% to 26%.

■ Our analysis of the evidence agrees with and supports the jury's conclusion, based on the expert's testimony and common sense, that the injury intensity would probably have been substantially reduced by the use of a seat belt. We will not disturb a rational verdict based on substantial evidence. *Baxter v. Fairmont Food Co.,* 74 *N.J.* 588, 597–98, 379 *A.2d* 225 (1977); *see N.J.S.A.* 39:3–76.2f(a) (seat belt usage requirements); *Schwarze v. Mulrooney,* 291 *N.J.Super.* 530, 540, 677 *A.2d* 1144 (App.Div.1996) (failure of proof on seat-belt damages). As the Supreme Court stated in *Waterson v. General Motors Corp.,* 111 *N.J.* 238, 275, 544 *A.2d* 357 (1988) (suit by driver against manufacturer): "We believe that this formula will properly isolate the damages *and fault* attributable to a plaintiff's failure to wear a seat belt." (Emphasis in original.) This approach fairly distinguishes between the comparative fault statute's impact, *N.J.S.A.* 2A:15–5.1 to 5.3, where the plaintiff is, as here, a driver, and "seat belt" or "second collision" considerations. *See* Brian E. Mahoney, *New Jersey Comparative Fault and Liability Apportionment,* § 10:4–1 at 261–63 (Gann 2000); *see also Dunn v. Durso,* 219 *N.J.Super.* 383, 401, 530 *A.2d* 387 (Law Div.1986).

We conclude that the judge properly calculated the damages after the additur and correctly molded the verdict as to plaintiff's comparative fault from both his driving and not using a seat belt. A new trial is not necessary.

Affirmed.