792 A.2d 1208

CHRISTINE ERNY, PLAINTIFF–APPELLANT, v. THE ESTATE OF ANTOINETTE T. MEROLA, MILTON MEROLA, MATTHEW ERNY, ANDREA D. GAMBINO, STATE OF NEW JERSEY, ANKA CONSTRUCTION, INC., JOHN DOES NO. 1–5 (FICTITIOUS NAMES BEING THE PERSONS OR CORPORATIONS INTENDED), XYZ CORP. NO. 1–5 (FICTITIOUS NAMES BEING THE PARTNERSHIPS AND/OR CORPORATIONS INTENDED), DEFENDANTS, AND ROY RUSSO, DEFENDANT–RESPONDENT.

Argued September 24, 2001—Decided January 30, 2002.

88

90

*Anita R. Hotchkiss,* argued the cause for appellant (*Porzio, Bromberg & Newman,* attorneys; *Ms. Hotchkiss* and *Linda Pissott Reig,* on the briefs).

*Edwin R. Matthews* argued the cause for respondent (*Mr. Matthews,* attorney; *Mr. Matthews* and *Robert J. Pansulla,* on the briefs).

The opinion of the Court was delivered by

LaVECCHIA, J.

The choice-of-law question presented in this appeal requires the Court to decide whether New Jersey or New York law should apply to determine the joint and several liability of the defendants. The underlying occurrence was an automobile accident in New Jersey that involved a New Jersey plaintiff and two New York defendants. After a trial the New York defendant drivers were found sixty and forty percent at fault respectively. New Jersey's law shields all defendants less than sixty percent at fault from joint liability for damages in excess of their apportioned responsibility. New York's law specifically subjects defendants in auto negligence actions to joint and several liability irrespective of their allocated percentage of fault, consistent with that state's policy of providing recovery to plaintiffs in such cases. To resolve the choice-of-law question, we must evaluate the respective interests of the two involved states to determine the state that has the most significant interest in governing the joint and several liability issue. Having done so, we conclude that New York law has primacy in these circumstances.

I.

On May 17, 1992, plaintiff Christine Erny, a New Jersey resident, was injured in a multi-car accident on Route 287 in Franklin Township, New Jersey. Her husband, Matthew Erny, was driving the pick-up truck in which she was a passenger. The chain of events that caused the accident began when Roy Russo, a

New York resident, while driving in a southerly direction on Route 287, crossed into the travel lane of Antoinette Merola, also a New York resident, causing Merola to lose control of her car and cross over the median into oncoming northbound traffic. Merola's car collided head-on with the Erny's pick-up truck and another vehicle. Merola was killed and several others were injured. As a result of the crash, Ms. Erny lost her spleen and left kidney and suffered other serious injuries.

Merola's car was registered and insured in New York; it was owned by her husband, Milton Merola. Russo was a student at Lehigh University in Pennsylvania at the time of the accident. He traveled from his home in New York through New Jersey to go to and from school. Russo's car was owned by his mother, Terry Russo, and the car was registered and insured in New York. Merola's car was covered under an automobile insurance policy having liability limits of $100,000 per occurrence; Russo's car was covered under an automobile policy with a liability limit of $1.5 million per occurrence.

Plaintiff instituted this negligence action in December 1992 against the Estate of Antoinette Merola, Milton Merola (the Merola defendants), Russo, Matthew Erny and a fictitious named defendant. Additional claims were filed by three other New Jersey residents and a foreign resident injured in the accident. Those additional claims were settled before the damages trial. In May 1993, the Merola defendants instituted a negligence/wrongful death action in the Supreme Court of New York against Russo and his mother (the Russo defendants). The Russo defendants moved to dismiss the New York action because of the pending action in New Jersey. Notwithstanding opposition by the Merola defendants, the motion was granted on comity grounds and the New York action was dismissed without prejudice. The Merola defendants then amended their cross-claim in the New Jersey action to assert claims for damages against the Russo defendants.

The trial court bifurcated the issues of liability and damages. The court also denied Milton Merola's motion for summary judg-

ment allowing plaintiff's claims to proceed against him as owner of the car driven by decedent Antoinette Merola. Following a jury trial on liability, a verdict was returned in favor of plaintiffs, assigning Russo forty percent fault and the Merola defendants sixty percent fault. The jury's allocation of fault also applied to the Merola defendants' cross-claim against Russo. New Jersey law was applied during the trial. After the trial on liability, the Merola defendants moved for application of New York comparative negligence law, which would allow the Merola defendants to recover forty percent of their damages from Russo. *N.Y. C.P.L.R.* § 1411 (McKinney 2001). That motion was denied, the trial court determining that choice of law considerations favored application of New Jersey comparative negligence law, *N.J.S.A.* 2A:15–5.1.

Two years later, the damages trial concluded with an award to plaintiff of $650,000. The trial court allocated the damages according to the jury's finding of liability and entered a judgment against Russo for forty percent, amounting to $260,000, and against the Merola defendants for sixty percent, amounting to $390,000. Plaintiff filed a post-judgment motion seeking several remedies, including the application of New York law on the issue of joint and several liability. The trial court denied the motion, concluding that because New Jersey law governed the comparative negligence issue, it also controlled the defendants' respective liability for damages. The court reasoned that the two concepts were "so intertwined" that "it would not be good policy to have one of those concepts decided under one state's law and the other under another state's law." The effect of the ruling limited plaintiff's right to recover damages. *N.J.S.A.* 2A:15–5.3 provided that a plaintiff could not recover one hundred percent of noneconomic damages from a joint tortfeasor who was less than sixty percent at fault. Conversely, if New York joint and several liability law applied plaintiff could recover all of her damages from either defendant irrespective of his or her percentage of fault, and therefore could collect from Russo because he had a sufficient

amount of liability coverage to satisfy Erny's judgment. *N.Y. C.P.L.R.* §§ 1601, 1602(6) (McKinney 2001).

On appeal, the Appellate Division determined that the trial court properly applied both New Jersey comparative negligence and joint and several liability law. *Erny v. Russo,* 333 *N.J.Super.* 88, 99, 104, 754 *A.*2d 606 (2000). The Appellate Division held that under the controlling choice-of-law analysis, it was appropriate to apply New Jersey comparative negligence law. The court then determined that despite the general rule that "conflict of laws determinations are to be made on an issue by issue basis," New Jersey law should apply on the joint and several liability issue, observing that "in a case where New Jersey's comparative negligence law has already been applied ... our law of joint and several liability, which is essentially a damages provision, will be applied." *Id.* at 102, 754 *A.*2d 606 (citing *Marinelli v. K-Mart Corp.* 318 *N.J.Super.* 554, 568–69, 724 *A.*2d 806 (App.Div.1999), *aff'd o.b.* 162 *N.J.* 516, 745 *A.*2d 508 (2000)).

We granted plaintiff's petition for certification, 167 *N.J.* 630, 772 *A.*2d 932 (2001), limited only to review of the choice-of-law determination concerning joint and several liability.

## II.

The issue before the Court is whether to apply New York's joint and several liability statutes, *N.Y. C.P.L.R.* §§ 1601 and 1602(6), or the New Jersey analog, *N.J.S.A.* 2A:15–5.3. Because New Jersey is the forum for this litigation, our choice-of-law rules apply. *Fu v. Fu,* 160 *N.J.* 108, 117–18, 733 *A.*2d 1133 (1999). Our rules employ a flexible "governmental-interest" analysis to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation. *Ibid.; Gantes v. Kason Corp.,* 145 *N.J.* 478, 484, 679 *A.*2d 106 (1996); *Veazey v. Doremus,* 103 *N.J.* 244, 247, 510 *A.*2d 1187 (1986). Ordinarily, choice-of-law determinations are made on an issue-by-issue basis, with each issue receiving separate analysis. *Gantes, supra,* 145 *N.J.* at 484, 679 *A.*2d 106; *Veazey, supra,* 103 *N.J.* at

248, 510 *A*.2d 1187 (1996); *White v. Smith,* 398 *F.Supp.* 130, 134 (D.N.J.1975) ("In order to determine which state has the greatest interest in the application of its own law, each issue must be analyzed separately."); *Grossman v. Club Med Sales, Inc.,* 273 *N.J.Super.* 42, 51, 640 *A*.2d 1194 (App.Div.1994) (observing that "[i]t is thus conceivable that the law of one jurisdiction may apply to one issue in a matter and the law of a second jurisdiction to another."). *See also Clawans v. United States,* 75 *F.Supp.*2d 368, 374–75 (D.N.J.1999) (applying New Jersey law to issue of damages and Maryland law to issue of fault apportionment). The precise question here is whether a discrete choice-of-law determination on joint and several liability is appropriate once New Jersey law has been held to apply to the issue of comparative negligence.

A.

The Restatement (Second) of Conflict of Laws proposes an issue-by-issue approach to choice-of-law determinations in tort and recommends that each issue be decided by "the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties ...." *Restatement (Second) of Conflict of Laws* § 145(1) (1971). Section 145 provides the method by which a court ought to determine which state has the most significant relationship to the issue under consideration. Comment a. to section 145 states that the method outlined sets forth "a principle applicable to all torts and to all issues in tort...." *Id.* § 145 cmt. a. Moreover, the commentary states that: "Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." *Id.* § 145 cmt. d. Section 146 reaffirms the issue-by-issue approach in the context of personal injury litigation to ensure that the policy of the state with the greater interest is applied. It provides:

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the

principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

[<em>Restatement, supra,</em> § 146].

Damage issues specifically are characterized as appropriate for an issue-specific determination with respect to which state has the dominant policy interest. The law selected upon application of the rule of section 145 should determine the measure of damages. *Id.* § 171. Comments a. and b. to section 171 explain:

a. The law selected by application of the rule of § 145 determines what items of loss can be included in the damages and what limitations, if any, are imposed upon the amount of recovery.

b. The determination of the state of the applicable law should be made in the light of the choice-of-law principles stated in § 6. In general, this should be the state which has the dominant interest in the determination of the particular issue. The state of conduct and injury will not, by reason of these contacts alone, be the state that is primarily concerned with the measure of damages in a tort action. The local law of this state will, however, be applied unless some other state has a greater interest in this issue.

The Restatement also cites the rule of section 145 as being appropriate for issue-specific choice-of-law determinations for contributory and comparative fault (section 164); joint torts (section 172); and contribution and indemnity among tortfeasors (section 173); although the law of the site of the conduct and injury is presumptively the preferred choice of law for contributory fault and joint torts. Thus, the general approach of the Restatement counsels issue-specific choice-of-law determinations in tort because the state where the conduct and injury occurred may not be, by reason of those contacts alone, the state with the primary interest. The analysis turns on the respective tort policy interests of the two states, whether their interests conflict, and which state's policies should prevail. The governmental-interest test of the Restatement focuses and guides our analysis in such determinations. *Fu, supra,* 160 *N.J.* at 118, 733 *A.*2d 1133.

B.

The question posed here is whether, having held that New Jersey's comparative negligence law applies, the courts below properly determined that New Jersey joint and several liability

law also must apply. Application of the governmental-interest test requires analysis of the purposes underlying each law. *See Restatement, supra*, § 6 cmt. e ("Every rule of law, whether embodied in a statute or in a common law rule, was designed to achieve one or more purposes."); *id.* § 145 cmt. c (stating that "the interest of a state in having its tort rule applied ... will depend on the purpose sought to be achieved by that rule....."). Hence, an examination of the purpose underlying our comparative negligence law does not eliminate the need to examine the underlying purpose of our joint and several liability law.

The law of contributory negligence generally addresses the effect of plaintiff's fault, if any, on plaintiff's entitlement to recover damages at all. The doctrine of comparative negligence considers those circumstances under which the plaintiff's contributory fault does not bar recovery, but does serve to reduce the damages he or she would otherwise be entitled to receive. Both concepts apportion fault in accordance with plaintiff's and defendant's negligence and affect plaintiff's entitlement to damages. See W. Page Keeton, et. al., *Prosser and Keeton on the Law of Torts*, § 65 at 451–53; (5th ed.1984) (observing that it is unfortunate that "contributory negligence is called negligence at all. 'Contributory Fault' would be a more descriptive term. Negligence as it is commonly understood is conduct that creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the actor himself." (citation omitted)); *supra*, § 67 at 469–70. New Jersey identifies comparative negligence as a liability doctrine. In *Ostrowski v. Azzara*, 111 *N.J.* 429, 443, n. 5, 545 *A.2d* 148 (1988), the Court noted that "[s]trictly speaking, comparative 'fault' is not really a fair measure of comparative contribution to damages. Comparative negligence is generally 'viewed as a liability doctrine, rather than a damage doctrine.'" (quoting Michael B. Gallub; Note, *A Compromise Between Mitigation and Comparative Fault?: A critical Assessment of the Seat Belt Controversy and a Proposal for reform*, 14 *Hofstra L.Rev.* 319, 327 (1986)). On the other hand,

joint and several liability has been regarded generally as a damages provision. Keeton, *supra*, § 67 at 475–77. The law of joint and several liability addresses plaintiff's recovery of damages, and allows plaintiff under certain circumstances to recover the entire amount of damages from any one of several defendants, subject to that defendant's right to seek contribution. *Id.* § 67 at 475 ("Most jurisdictions which have adopted comparative negligence have retained the common law rule of joint and several liability, by which a plaintiff is entitled to recover his judgment in whole or in part from any jointly liable defendant.").

Contributory or comparative negligence laws vary in kind and degree among the states, ranging from continued application of the harsh doctrine of contributory negligence, to limited or modified application dependent on type of damage, cause of action or percentage of contributory negligence. *Fernanders v. Marks Constr. of South Carolina, Inc.*, 330 *S.C.* 470, 499 *S.E.*2d 509, 512–13 (1998). A separate survey of joint and several liability laws also reveals wide variation among the states. Aaron D. Twerski, *One Size Does Not Fit All: The Third Multi-Track Restatement of Conflict of Laws*, 75 *Ind. L.J.* 667, 671–72 (2000). The significant differences among states in applying principles of tort law belies the suggestion that any specific combination of the two legal issues intrinsically are tied to one another.

■ Linking joint and several liability to comparative negligence appears, in the first instance, logically dictated because the two are governed by a single statutory scheme in New Jersey. *N.J.S.A.* 2A:15–5.1,–5.3. Furthermore, the two provisions of the Comparative Negligence Act complement each other in service of a common purpose—the fair apportionment of damages. Enactment of comparative negligence ameliorated the harsh consequences of contributory negligence that barred a minimally negligent plaintiff from recovering any damages. *Van Horn v. William Blanchard Co.*, 88 *N.J.* 91, 94, 438 *A.*2d 552 (1981); *Schwarze v. Mulrooney*, 291 *N.J.Super.* 530, 539, 677 *A.*2d 1144 (App.Div.1996). The modified comparative negligence

approach reflected by our statute provides a fairer framework for imposing liability, apportioning losses, and allowing redress. *Renz v. Penn Central Corp.*, 87 *N.J.* 437, 454–55, 435 *A.*2d 540 (1981); *Lee's Hawaiian Islanders, Inc. v. Safety First Prods., Inc.*, 195 *N.J.Super.* 493, 505, 480 *A.*2d 927 (App.Div.1984). (stating that "[i]t is clear that the effect and intent of the Comparative Negligence Act were not only to accord a fairer result to moderately negligent plaintiffs but also to accord fairer justice to joint tortfeasors by calling upon them to contribute to the award in proportion to their own actual degree of negligence."). Our modified joint and several liability statute also promotes redress to plaintiffs and provides for a fair apportionment of damages as among joint defendants. *Lee's Hawaiian Islanders, supra*, 195 *N.J.Super.* at 506, 480 *A.*2d 927. When applied together, the statutes implement New Jersey's approach to fair apportionment of damages among plaintiffs and defendants, and among joint defendants. But in a choice-of-law determination involving parties from other states, application of New Jersey law on joint and several liability does not follow automatically from the determination that our comparative negligence law applies. New Jersey's scheme of joint and several liability can operate independently of our comparative negligence law, and vice versa.

■ Our joint and several liability law reflects our state's chosen policies. Those policies are tested in a choice-of-law analysis by comparison to the other interested state's policy preferences. Traditional choice-of-law analysis in a tort context does not permit the examination to end upon review only of the law of the site of the conduct and injury. Although section 172 of the Restatement regards the law of the site of the conduct and injury as the presumptively applicable law, the governmental-interest analysis requires that the sister state's policies be reviewed before determining which state has the dominant interest in having its joint and several liability law apply. The inquiry also must determine whether any policy of the situs state would be frustrated by application of another state's law. Thus, when the

sister state has an interest in having its law applied to a specific issue, and the policies of the situs state will not be frustrated by the application of the other state's law, the presumption that the law of the situs state prevails may be overcome.

### III.

### A.

 The first prong of the governmental-interest test requires the Court to determine whether there is an actual conflict between the laws of the states involved. *Gantes, supra,* 145 *N.J.* at 484, 679 *A.*2d 106; *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187. Unquestionably, an actual conflict exists between the respective joint and several liability laws of New York and New Jersey. New York's *C.P.L.R.* section 1601 limits the liability of a joint tortfeasor who is less than fifty percent responsible to his portion of noneconomic losses. That limitation on joint and several liability does not apply, however, to a person "held liable by reason of his use, operation, or ownership of a motor vehicle...." *N.Y. C.P.L.R.* § 1602(6). Thus, New York has expressed a specific interest in apportioning responsibility for damages in an automobile accident caused by one of its residents. In automobile accident cases, New York does not place any limitation on joint and several liability irrespective of an individual defendant's percentage allocation of fault. Its policy allows a plaintiff an expansive opportunity for full recovery of damages. Conversely, under New York's policy, a defendant in an automobile negligence case has no expectation that his or her loss will be limited to the percentage of allocated fault. Thus, under New York law, plaintiff may recover one hundred percent of her damages from Russo.

In contrast, under New Jersey's joint and several liability statute, *N.J.S.A.* 2A:15–5.3, a defendant who is less than sixty percent liable cannot be held responsible for more than his percentage allocation of liability for noneconomic damages. The statute thus allows protection from joint and several liability for

defendants not substantially at fault. Therefore, under New Jersey law, plaintiff may recover only forty percent of her noneconomic damages from Russo because that is the percentage of fault that the jury attributed to him, and that percentage places him below the threshold of responsibility for any amount in excess of his apportioned share of the damages.

### B.

#### 1.

The second prong of the governmental-interest analysis requires the Court to determine the interest that each state has in applying its joint and several liability law to the parties in this automobile accident litigation. *Fu, supra,* 160 *N.J.* at 119, 733 *A.*2d 1133 (citing *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187 for proposition that courts must "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and the parties."). If the contacts do not align with the policies, the state has no interest in applying its law. *Veazey, supra,* 103 *N.J.* at 248, 510 *A.*2d 1187; *see also White, supra,* 398 *F.Supp.* at 134 (observing that "[i]f a strong state policy or interest will be neither fostered by applying that state's law, nor frustrated by the failure to apply it, it is highly unlikely that that state has any interest whatsoever in blanketing that particular issue with its law.").

Five factors drawn from section 145 of the Restatement guide courts in applying the governmental-interest test in tort cases. *Fu, supra,* 160 *N.J.* at 122, 733 *A.*2d 1133. The factors are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Ibid.* The most important of those is the competing interests of the states. As discussed in *Fu,* the initial focus "should be on 'what [policies] the legislature or court intended to protect by having that law apply to wholly domestic con-

cerns, and then, whether these concerns will be furthered by applying that law to the multi-state situation.'" *Id.* at 125, 733 A.2d 1133 (quoting *Pfizer, Inc. v. Employers Ins. of Wausau,* 154 *N.J.* 187, 198, 712 A.2d 634 (1998) (citations omitted) (brackets in original)).

*Fu* also instructs courts in how to approach the other four factors. When considering the interests of interstate comity, a court must determine "whether application of a competing state's law would frustrate the policies of other interested states." *Fu, supra,* 160 *N.J.* at 122, 733 A.2d 1133 (citing *Restatement, supra,* § 145 cmt. b). When determining the interests underlying the field of tort law, a court must consider "the degree to which deterrence and compensation, the fundamental goals of tort law, would be furthered by the application of a state's local law." *Fu, supra,* 160 *N.J.* at 123, 733 A.2d 1133 (citing *Restatement, supra,* § 145 cmt. c). "Because every tort rule, to some extent, is designed both to deter and to compensate, it is necessary to evaluate on a case-by-case basis the relative weight of those underlying purposes with respect to a specific rule." *Fu, supra,* 160 *N.J.* at 123, 733 A.2d 1133 (citing *Restatement, supra,* § 145 cmt. c).

▉ The remaining two factors are less significant for the purpose of making choice-of-law determinations in tort actions. The interests of the parties plays a small role because a person who causes an unintentional injury is not necessarily aware of the law that may be applied to the consequences of his actions. *Fu, supra,* 160 *N.J.* at 123, 733 A.2d 1133 (citing *Restatement, supra,* § 145 cmt. b). The interests of judicial administration afford courts a chance to consider the practicality of applying a specific law in a given situation; however, to the extent that that factor conflicts with a strong state policy, the factor yields. *Fu, supra,* 160 *N.J.* at 124, 733 A.2d 1133 (citing *Restatement, supra,* § 145 cmt. b).

Adding context to the analysis, section 145 of the Restatement specifies the contacts that are most germane to the governmental-

interest test: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Fu, supra,* 160 *N.J.* at 125, 733 *A.*2d 1133 (citing *Restatement, supra,* § 145(2)). In personal injury cases, the place of the injury is important, and when both the conduct and the injury occur in the same place, that jurisdiction's law generally will apply except in those rare instances where another jurisdiction has a demonstrably dominant interest and no policy of the situs state is frustrated by application of the sister state's policy. *Restatement, supra,* § 145 cmt. e; § 146 cmts. c and d.

2.

■ In applying the governmental-interest test to the facts in this record, we begin by noting the following:

1. The place where the injury occurred is New Jersey;
2. The place where the conduct causing the injury occurred is New Jersey;
3. The domicile and residence of the parties is
 a) Plaintiff Erny–New Jersey;
 b) Defendants Merola–New York;
 c) Defendant Russo–New York; and
4. The place where the accident occurred is New Jersey.

In addition, at the time of the accident both Merola and Russo were driving cars registered and insured in New York. Those contacts are relevant to the extent that they implicate the policies underlying the conflicting statutory provisions. *Fu, supra,* 160 *N.J.* at 125, 733 *A.*2d 1133 (citing *White, supra,* 398 *F.Supp.* at 134).

■ We next apply the five factors to determine which state has the most significant relationship to the occurrence and the parties concerning the issue of recovery of damages. *Fu, supra,* 160 *N.J.* at 119, 733 *A.*2d 1133. That is accomplished by identifying the governmental policies underlying each state's statute and then determining how those policies are affected by the contacts. *Ibid.* The most important factor is the competing interests of the

states, followed in importance by the interests underlying tort law, and the interests of interstate comity. *Id.* at 122–25, 733 *A.*2d 1133.

When New York enacted section 1601, it abrogated the common law of joint and several liability that allowed a joint tortfeasor to be held responsible for the total damages awarded to a plaintiff. The change addressed the inequity that occurred when defendants who were only slightly at fault were forced to pay a disproportionate share of damages awards. *Morales v. County of Nassau,* 94 *N.Y.*2d 218, 703 *N.Y.S.*2d 61, 724 *N.E.*2d 756, 757–58 (1999). However, the New York legislature also enacted exceptions to the law that served to perpetuate common law joint and several liability in certain instances, reflecting " 'careful deliberations over the appropriate situations for a modified joint and several liability rule....' " *Id.* at 759 (quoting Governor's Approval Mem., Bill Jacket, L. 1986, c. 682, reprinted in *1986 N.Y. Legis. Ann.* at 289). Those exceptions include liability resulting from use of a motor vehicle. *N.Y. C.P.L.R.* § 1602(6). Therefore, in balancing the interests that led to the abrogation of the joint and several liability rule, the New York legislature determined that a joint tortfeasor in a car accident, as in this case, should not receive the protection of section 1601. Rather, the purpose underlying the common law joint and several liability law continues to govern: "[T]he sense that compensation of the relatively innocent victim serves a more important purpose than striking a nuanced balance between and among the relatively guilty." *Siler v. 146 Montague Assocs.,* 228 *A.D.*2d 33, 652 *N.Y.S.*2d 315, 320 (N.Y.App.Div.) *appeal dismissed,* 90 *N.Y.*2d 927, 663 *N.Y.S.*2d 838, 686 *N.E.*2d 497 (1997) (quotation omitted). New York placed more value on protection of the innocent victim in an automobile accident than reducing the cost of automobile liability insurance by application of the new law to automobile negligence actions.

That policy concern for the victims of automobile accidents is expressed elsewhere in New York law as well. Moreover, New York's concern is not limited to the protection and interest of its citizens. New York automobile insurance laws require coverage

for claims "arising out of the ownership, use or operation of a vehicle 'within the state of New York, or elsewhere in the United States in North America or the Dominion of Canada." *Johnson v. Hertz Corp.*, 315 *F.Supp.* 302, 304 (S.D.N.Y.1970) (quoting *N.Y. Veh. & Traf. Law* § 311(4)(a) (McKinney 1970)). That statutory language led the federal district court to conclude that New York's automobile insurance laws "express a policy aimed at protecting innocent victims of New York vehicle registrants, whether injured or harmed in New York State or elsewhere." *Johnson, supra,* 315 *F.Supp.* at 304. New York thus has a long-standing and multifaceted policy of providing for recovery to plaintiffs injured in accidents caused by its residents driving automobiles registered and insured in New York.

On the other hand, the New Jersey joint and several liability statute, *N.J.S.A.* 2A:15–5.3, was enacted to provide fairness to joint tortfeasors by requiring each "to contribute to the award in proportion to their own actual degree of negligence." *Lee's Hawaiian Islanders, supra,* 195 *N.J.Super.* at 505, 480 *A.*2d 927. Amendments to New Jersey's statute indicate, however, that the Legislature limited the liability of joint tortfeasors to address concerns about both the rising cost of insurance and increasing litigation. In 1987, the Legislature amended section 2A:15–5.3 to impose full responsibility for all damages only on joint tortfeasors whose percentage of fault was sixty percent or more. That law also imposed on any joint tortfeasor found to be more than twenty percent responsible, but less then sixty percent responsible, the potential for full responsibility for economic damages in addition to that tortfeasor's allocated share of noneconomic damages. That version of the law was in place at the time of plaintiff's accident. In 1995, the Legislature again amended *N.J.S.A.* 2A:15–5.3, limiting responsibility for the full amount of damages to only those tortfeasors who are found to be sixty percent or more responsible. The sponsor commented at that time that the pre–1995 formula contributed to the rising cost of litigation and liability insurance. *Sponsor Statement to Senate Bill No. 1494* (October 3, 1994). The Sponsor's Statement elaborated on that point:

> This Bill is intended to reduce the cost of general liability insurance for everyone by eliminating the so called "deep pocket" sought by many defense (sic) attorneys when they file lawsuits with multiple defendants. Under present law, any person who is determined to be more than 20% at fault in any action may end up paying damages beyond his actual share of liability as determined by his degree of fault; this means that an insurance company must base its liability premiums upon a worse-case scenario (i.e. that the defendant would be called upon to contribute the entire judgment if other defendants do not have sufficient resources).

Although that Statement accompanied the 1995 amendment and thus occurred after plaintiff's accident, it reflects the Legislature's general concern about the connection between joint and several liability and the cost of liability insurance. Unlike the New York Legislature, the New Jersey Legislature did not exempt automobile negligence actions from the reach of the modifications to the joint and several liability statute. Thus, the policy underlying New Jersey's joint and several liability law promotes redress to plaintiffs but declines to make a joint tortfeasor fully responsible for damages beyond his or her allocated share unless that tortfeasor is more than sixty percent at fault. New Jersey's policy thus reflects a balancing of interests that factors in its concern about increased liability insurance costs.

 In addition to identifying the respective governmental interests, we also must consider how the statutes in issue promote the goals that generally underlie tort law-compensation and deterrence. *Fu, supra*, 160 *N.J.* at 123, 733 *A.*2d 1133. New York's statute, which specifically excepts automobile accident defendants from the protections of its modified joint and several liability scheme, expresses a weightier interest in both compensation and deterrence than does the New Jersey statute, which limits the liability of joint tortfeasors involved in automobile accidents. By providing that a negligent defendant can be held responsible for one hundred percent of a victim's injuries irrespective of degree of fault, the New York statute encourages its drivers to insure more adequately their vehicles and, inferentially, to drive with care. The statute benefits victims. Its application makes it much more likely that a plaintiff will recover fully, despite encountering an underinsured tortfeasor. New Jersey's statute, in contrast, has a

more nuanced approach. It permits a plaintiff to seek full recovery from a substantially negligent joint tortfeasor, but it also evinces a policy of protecting certain defendants and thus containing insurance costs.

The governmental-interest analysis also requires the Court to consider how strongly the contacts involved relate to each state's policy of deterrence and compensation, as well as the interests of interstate comity, that is, whether application of one law will further or frustrate the policies of the other state. *Fu*, *supra*, 160 *N.J.* at 122, 125, 733 *A.*2d 1133.

This Court stated in *Fu* that "New York has demonstrated an unwavering policy that 'innocent plaintiffs should have a financially responsible source from which to recover . . . [and] that automobile ownership *per se* carries a heavy burden of responsibility.'" 160 *N.J.* at 136–37, 733 *A.*2d 1133 (quoting *White, supra*, 398 *F.Supp.* at 137). That policy influenced the legislature to enact a comprehensive scheme under its Vehicle and Insurance Law "requir[ing] owners to purchase insurance sufficient to meet the demands of this responsibility, irregardless of where that demand is made." *White, supra*, 398 *F.Supp.* at 137 (citing *N.Y. Veh. & Traf. Law* § 311(4)(a) (McKinney 1970)). Thus, fairly viewed, New York's policy clearly favors compensation to plaintiffs in automobile negligence actions brought against New York defendants wherever in the United States the accident occurs, i.e., both domiciliary and non-domiciliary plaintiffs. Application of New York's joint and several liability law in this matter involving only New York defendants whose cars are registered and insured in New York furthers that governmental interest.

New Jersey's joint and several liability law, in contrast, balances its desire to allow plaintiff redress against a concern about New Jersey liability insurance rates, including car insurance rates. That concern is evidenced in the evolution of the joint and several liability statute. Successive amendments progressively restricted a plaintiff's ability to recover the full amount of damages from a single joint tortfeasor. The Sponsor's Statement to the 1995 amendment reflects the State's monitoring of escalating insurance

and litigation costs and its attempt to moderate those costs. New Jersey's policy interests are not furthered by applying its law in this case where neither defendant drove a vehicle registered or insured in New Jersey. Accordingly, limiting the joint and several liability of these defendants through application of our joint and several liability law would not further New Jersey's interest in reducing liability insurance rates.

We also note that application of New York's joint and several law, which would impose full responsibility on a defendant who is less than sixty percent liable and is registered and insured in New York, does not frustrate New Jersey's policies. However, application of New Jersey's law would frustrate New York's strong policy of compensation in automobile accident cases and its interest in deterrence of negligence. Because the policy underlying New Jersey's law is not thwarted by application of New York joint and several liability law to this case, and because the compensation and deterrence policies underlying New York's law are advanced, the Restatement's presumption in favor of the law of the situs of the conduct and injury is overcome. Accordingly, we hold that New York's joint and several liability law applies to plaintiff's recovery of damages in this matter.

### 3.

Defendant has argued that application of New York law on the facts in this case would be inconsistent with the Court's prior determinations in *Fu v. Fu, supra,* 160 *N.J.* at 108, 733 *A.*2d 1133 and *Marinelli v. K–Mart Corp., supra,* 318 *N.J.Super.* at 554, 724 *A.*2d 806. That argument tends to diminish the individualized assessment that controls in the governmental-interests test that we apply to each choice-of-law determination. Each choice-of-law case presents its own unique combination of facts—the parties' residences, the place and type of occurrence and the specific set of governmental interests—that influence the resolution of the choice-of-law issue presented. Defendant's attempt to compare *Fu* and *Marinelli* to this matter is unavailing.

*Fu* concerned the issue of vicarious liability in the context of an automobile accident in New York that involved only New Jersey

residents. *Fu, supra,* 160 *N.J.* at 125, 733 *A.*2d 1133. Thus, New York's policy that holds its registered and insured resident drivers liable for automobile negligence damages to both domiciliary and non-domiciliary plaintiffs was not implicated. *Id.* at 139, 733 *A.*2d 1133. In comparison, the defendants here are all New York residents with cars registered and insured pursuant to New York requirements. New York's governmental interest is strong and would be frustrated if its law is not applied.

In *Marinelli,* a case that did involve joint and several liability, only one defendant was from the Commonwealth of Pennsylvania. He was determined to be only ten percent responsible for an accidental shooting in New Jersey of a New Jersey plaintiff by other defendants who also were residents of New Jersey. *Marinelli, supra,* 318 *N.J.Super.* at 558, 724 *A.*2d 806. Pennsylvania had no strong policy interest in asserting its joint and several liability law in the matter, unlike the significant interests that underlie New York's law in this case. The Appellate Division in *Marinelli* performed a thorough governmental-interest analysis and properly concluded in that set of circumstances that New Jersey law should be applied. *Id.* at 566–67, 724 *A.*2d 806. Accordingly, we perceive no inconsistency between our conclusion in this matter that New York joint and several liability law should apply and the holdings in either *Fu* or *Marinelli.*

### IV.

The judgment of the Appellate Division is reversed and the matter is remanded for further proceedings consistent with this opinion.

For reversal and remandment—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.