SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Ginsberg v. Quest Diagnostics, Incorporated (A-33/34/53-15) (076288)**

**Argued September 13, 2016 -- Decided October 26, 2016**

**(NOTE:  The Court did not write a plenary opinion in this case.  Instead, the Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Sabatino's written opinion, which is published as Ginsberg ex rel. Ginsberg v. Quest Diagnostics, Inc., 441 N.J. Super. 198 (App. Div. 2015).)**

**PER CURIAM**

In this interlocutory appeal, the Court considers whether the choice-of-law principles set forth in §§ 146, 145, and 6 of the Restatement (Second) of Conflict of Laws (1971) (Restatement) should be applied uniformly to all defendants in a given case, or whether courts should undertake a defendant-by-defendant choice-of-law analysis when the defendants are domiciled in different states.

Plaintiffs Tamar Ginsberg and Ari Ginsberg, who are now New Jersey residents, lived in New York during Tamar's pregnancy and at the time of the birth of their daughter, Abigail Ginsberg.  Abigail tragically died from Tay-Sachs disease, a genetically inherited, incurable neurological disorder, at the age of three.

Plaintiffs sued a New York laboratory owned and operated by defendant Quest Diagnostics Incorporated (Quest), a New Jersey-based medical testing company, alleging failure to provide correct blood test results when plaintiff Ari Ginsberg sought to determine whether he was a Tay-Sachs carrier.  Quest, in turn, asserted a third-party claim against Mount Sinai Medical Center, Inc. (Mount Sinai), a New York hospital, which allegedly tested Ari Ginsberg's blood sample in New York pursuant to its contract with Quest.  Plaintiffs also sued several New Jersey-domiciled defendants (the New Jersey defendants), whom they alleged to have provided plaintiff Tamar Ginsberg with negligent advice and treatment in New Jersey.

Plaintiffs asserted claims for wrongful birth, wrongful life, negligence, negligent hiring, and medical malpractice.  A substantial distinction between New York and New Jersey law with respect to wrongful birth claims gave rise to the choice-of-law issue at the heart of this case.  Although both states recognize a claim premised on a plaintiff's lost opportunity to terminate a pregnancy when it is anticipated that the child will suffer from congenital defects, the two states' laws differ with respect to the damages that a plaintiff may recover in a wrongful birth case.  New Jersey recognizes damages for emotional injury to the parents as well as for the special medical expenses they incur in raising their child; New York limits damages to expenses for care and treatment.

Before the trial court, Quest, Mount Sinai, and the New Jersey defendants moved for a determination that New York law govern the plaintiffs' claims.  The trial court considered itself constrained to apply the law of a single state to the case and denied defendants' motion after performing the three-step choice-of-law determination directed by the Restatement.  First, the court determined that there was a genuine conflict between New York and New Jersey law.  Second, it identified the place of injury as New Jersey and determined that New Jersey law would therefore presumptively govern the case under Restatement § 146.  Third, the court found that based on the contacts set forth in Restatement § 145 and the principles stated in Restatement § 6, the nexus between New York and the issues and parties in this case failed to overcome the presumption in favor of New Jersey law.  Accordingly, the court held that New Jersey law governs plaintiffs' claims against all defendants.

The Appellate Division granted leave to appeal and reversed the trial court's determination in a published opinion.  Ginsberg ex rel. Ginsberg v. Quest Diagnostics, Inc., 441 N.J. Super. 198 (App. Div. 2015).  Although the panel agreed that New Jersey and New York law diverged in material respects, it concluded that New York constituted the place of injury because it was the state of plaintiffs' domicile during Tamar's pregnancy, the state in

which prenatal testing would have been conducted and the pregnancy would likely have been terminated, and the state in which Abigail Ginsberg was born.

The appellate panel then considered the contacts set forth in Restatement § 145 and the principles stated in Restatement § 6 to determine whether New Jersey has a more significant relationship to the parties and the issues than New York. The panel rejected the trial court's assumption that the law of a single state must govern all of the issues in this lawsuit and instead undertook separate choice-of-law analyses for the New Jersey and New York defendants. The panel found that the presumption in favor of New York law was overcome with regard to the New Jersey defendants, but not with regard to Quest and Mount Sinai.

The Court granted the New Jersey defendants' motion for leave to appeal, challenging the application of New Jersey law to the claims against them, and plaintiffs' cross-motion for leave to appeal, challenging the application of New York law to the claims against Quest and Mount Sinai. 223 N.J. 552 (2015); 223 N.J. 553 (2015); 224 N.J. 242 (2016).

**HELD**: The judgment of the Appellate Division is **AFFIRMED** substantially for the reasons expressed in Judge Sabatino's opinion.

1. The Court agrees with the panel that, in a majority of cases, a defendant-by-defendant analysis furthers the Restatement principles and provides the most equitable method of resolving choice-of-law questions. First, the central inquiry under Restatement §§ 146, 145, and 6 focuses the court on the state's relationship to all parties in a case, which may lead to different results for defendants who reside in different states. Second, both § 145(2) and § 6 suggest a defendant-specific analysis in assessing whether the presumption in favor of applying the law of the place of injury has been overcome by directing the court's attention to each defendant as an individual. Third, a defendant-specific choice-of law analysis accords with the Court's longstanding recognition that it is appropriate to analyze choice-of-law questions on an issue-by-issue basis. (pp. 15-17)

2. The Court observes that in a case such as this, involving the law of only two states, a defendant-by-defendant approach is unlikely to prove impractical should the matter proceed to trial. The relevant law can be incorporated into a charge that will guide the jury as it considers the elements of each claim against each defendant. The Court acknowledges that a defendant-by-defendant choice-of-law analysis is not feasible in every matter and notes that, in a complex case with many parties from different states, the trial court retains the discretion to decline a defendant-by-defendant approach and to apply the law of a single state to claims asserted against all defendants. (pp. 17-18)

3. The New Jersey defendants' concern that they could be held liable for a disproportionate share of an award of damages for emotional harm is unfounded because, under the New Jersey Comparative Negligence Act, a New Jersey defendant's liability for non-economic damages would be limited in accordance with its percentage share of fault under N.J.S.A. 2A:15-5.2(a)(2). (p. 19)

The judgment of the Appellate Division is **AFFIRMED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.**

ABIGAIL GINSBERG, an infant,
by her mother TAMAR GINSBERG,
as Guardian ad litem; TAMAR
GINSBERG, Individually; and
ARI GINSBERG, Individually,

    Plaintiffs-Respondents
    and Cross-Appellants,

        v.

QUEST DIAGNOSTICS,
INCORPORATED,

    Defendant-Respondent,

        and

ANDREW RUBENSTEIN, M.D.;
HACKENSACK UNIVERSITY MEDICAL
CENTER; HACKENSACK UNIVERSITY
MEDICAL CENTER DEPARTMENT OF
PEDIATRICS GENETICS SERVICE;
and JUDITH DURCAN, M.S.,

    Defendants-Appellants
    and Cross-Respondents,

        and

QUEST DIAGNOSTICS,
INCORPORATED,

    Third-Party Plaintiff,

        v.

THE MOUNT SINAI MEDICAL
CENTER, INC.,

    Third-Party Defendant-
    Respondent.

1

ABIGAIL GINSBERG, an infant,
by her mother TAMAR GINSBERG,
as Guardian ad litem; TAMAR
GINSBERG, Individually; and
ARI GINSBERG, Individually,

      Plaintiffs-Respondents
      and Cross-Appellants,

          v.

QUEST DIAGNOSTICS,
INCORPORATED,

      Defendant-Respondent,

          and

ANDREW RUBENSTEIN, M.D.
HACKENSACK UNIVERSITY MEDICAL
CENTER; HACKENSACK UNIVERSITY
MEDICAL CENTER DEPARTMENT OF
PEDIATRICS GENETICS SERVICE;
and JUDITH DURCAN, M.S.,

      Defendants-Appellants
      and Cross-Respondents,

          and

QUEST DIAGNOSTICS,
INCORPORATED,

      Third-Party Plaintiff,

          v.

THE MOUNT SINAI MEDICAL
CENTER, INC.,

      Third-Party Defendant-
      Respondent.

ABIGAIL GINSBERG, an infant, by her mother TAMAR GINSBERG, as Guardian ad litem; TAMAR GINSBERG, Individually; and ARI GINSBERG, Individually,

Plaintiffs-Respondents and Cross-Appellants,

v.

QUEST DIAGNOSTICS, INCORPORATED,

Defendant-Respondent,

and

HACKENSACK UNIVERSITY MEDICAL CENTER; HACKENSACK UNIVERSITY MEDICAL CENTER DEPARTMENT OF PEDIATRICS GENETICS SERVICE; and JUDITH DURCAN, M.S.; and ANDREW RUBENSTEIN, M.D.,

Defendants-Appellants and Cross-Respondents,

and

QUEST DIAGNOSTICS, INCORPORATED,

Third-Party Plaintiff,

v.

THE MOUNT SINAI MEDICAL CENTER, INC.,

Third-Party Defendant-Respondent.

ABIGAIL GINSBERG, an infant, by her mother TAMAR GINSBERG, as Guardian ad litem; TAMAR GINSBERG, Individually; and ARI GINSBERG, Individually,

  Plaintiffs-Respondents and Cross-Appellants,

    v.

QUEST DIAGNOSTICS, INCORPORATED,

  Defendant-Respondent,

    and

ANDREW RUBENSTEIN, M.D.; HACKENSACK UNIVERSITY MEDICAL CENTER; HACKENSACK UNIVERSITY MEDICAL CENTER DEPARTMENT OF PEDIATRICS GENETICS SERVICE; and JUDITH DURCAN, M.S.,

  Defendants-Respondents and Cross Appellants,

    and

QUEST DIAGNOSTICS, INCORPORATED,

  Third-Party Plaintiff,

    v.

THE MOUNT SINAI MEDICAL CENTER, INC.,

  Third-Party Defendant-Respondent.

4

Argued September 13, 2016 – Decided October 26, 2016

On appeal from the Superior Court, Appellate Division, whose opinion is reported at 441 N.J. Super. 198 (App. Div. 2015).

Ellen L. Casagrand argued the cause for appellants and cross-respondents Hackensack University Medical Center, Hackensack University Medical Center Department of Pediatrics Genetics Service, and Judith Durcan, M.S. (Buckley Theroux Kline & Petraske, attorneys).

Michael R. Ricciardulli argued the cause for appellant and cross-respondent Andrew Rubenstein, M.D. (Ruprecht Hart Weeks & Ricciardulli, attorneys; Mr. Ricciardulli and Daniel B. Devinney, on the brief).

Victoria E. Phillips argued the cause for respondents and cross-appellants Abigail Ginsberg, Tamar Ginsberg, and Ari Ginsberg (Phillips & Paolicelli, attorneys; Ms. Phillips and Daniel J. Woodard, on the briefs).

Thomas J. Cafferty argued the cause for respondent Quest Diagnostics, Incorporated (Gibbons, attorneys; Mr. Cafferty, Mark S. Sidoti, Nomi I. Lowy, and Lauren James-Weir, of counsel and on the briefs).

Benjamin H. Haftel argued the cause for respondent The Mount Sinai Medical Center, Inc. (Vaslas Lepowsky Hauss & Danke, attorneys).

PER CURIAM

I.

When a conflict-of-law question arises in the setting of a personal injury case, New Jersey courts have used principles set forth in the Restatement (Second) of Conflict of Laws (1971) (Restatement).  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 135-36 (2008); see also Erny v. Estate of Merola, 171 N.J. 86, 95-97 (2002) (employing Restatement factors in choice-of-law analysis); Fu v. Fu, 160 N.J. 108, 119 (1999) (same).  The Restatement directs a three-step determination.  First, the court ascertains whether there is a genuine conflict between the laws of two or more relevant states with regard to a material issue in the case.  Camp Jaycee, supra, 197 N.J. at 143; Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007); Gantes v. Kason Corp., 145 N.J. 478, 484 (1996).  Second, if there is such a conflict, the court identifies the state that is the place of injury and presumes that the law of that state governs the action.  Restatement § 146; see also Camp Jaycee, supra, 197 N.J. at 141 (noting applicability of Restatement § 146 presumption in New Jersey personal injury actions).

Finally, the court determines whether the presumption in favor of the law of the place of injury has been overcome by virtue of a competing state's "more significant relationship to the parties and issues."  Camp Jaycee, supra, 197 N.J. at 143. In assessing the relationship between the other state and the parties and issues, the court considers a series of "contacts":

6

(1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." Restatement § 145(2); see also Camp Jaycee, supra, 197 N.J. at 140-41. The court evaluates those contacts "according to their relative importance with respect to the particular issue." Restatement § 145(2); see Camp Jaycee, supra, 197 N.J. at 140-41, 143; see also Erny, supra, 171 N.J. at 101 (evaluating contacts for alignment with state policies).

In its determination of whether a competing state bears a more significant relationship to the issues and parties, the court also relies on factors identified in Restatement § 6: (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and (7) "ease in the determination and application of the law to be applied." Restatement § 6. Based on the contacts identified in Restatement § 145 and the "cornerstone principles of

7

[Restatement §] 6," the court decides whether the claim will be decided under the law of the place of injury, in accordance with the presumption, or under the law of another state. Camp Jaycee, supra, 197 N.J. at 144, 155.

## II.

This interlocutory appeal raises a question not addressed in our prior choice-of-law jurisprudence: whether a court should apply the Restatement's principles uniformly to all defendants in a given case, or undertake a defendant-by-defendant choice-of-law analysis when the defendants are domiciled in different states.

The appeal arises from the trial court's application of the Restatement's choice-of-law rules to the cause of action asserted by plaintiffs Tamar Ginsberg and Ari Ginsberg against New York and New Jersey individuals and entities named as defendants in this matter. Plaintiffs' claims arose from the birth, illness, and death of their daughter, Abigail Ginsberg. When she was seven months old, Abigail was diagnosed with Tay-Sachs disease, a genetically inherited, incurable neurological disorder. Tragically, at the age of three, Abigail died of Tay-Sachs disease.

Plaintiffs, who are now New Jersey residents, lived in New York during Tamar's pregnancy and at the time of their daughter's birth. They sued a New York laboratory owned and

8

operated by defendant Quest Diagnostics Incorporated (Quest), a New Jersey-based medical testing company. They alleged that Quest's New York laboratory negligently failed to provide correct blood test results to plaintiff Ari Ginsberg, who sought genetic testing prior to plaintiffs' marriage to determine whether he was a Tay-Sachs carrier. Quest asserted a third-party claim for indemnification, contribution, and breach of contract against Mount Sinai Medical Center, Inc. (Mount Sinai), a New York hospital, based on the allegation that Mount Sinai tested plaintiff Ari Ginsberg's blood sample in New York pursuant to a contract between the hospital and Quest.

Plaintiffs also sued several New Jersey-domiciled defendants. They alleged that defendant Dr. Andrew Rubenstein (Dr. Rubenstein), a licensed New Jersey physician, failed to review Ari Ginsberg's genetic testing results, and that he negligently advised and treated plaintiff Tamar Ginsberg in New Jersey. They also claimed that defendant Judith Durcan, M.S. (Durcan), a New Jersey genetic counselor; defendant Hackensack University Medical Center (HUMC), a New Jersey hospital; and defendant University Medical Center Department of Pediatrics Genetics Service (Genetics Service), a division of HUMC,

9

negligently advised and treated plaintiff Tamar Ginsberg in New Jersey.[1]

Plaintiffs contended that by virtue of defendants' negligence, they were deprived of critical information about Ari Ginsberg's status as a Tay-Sachs carrier.  They alleged they were consequently denied the opportunity to seek prenatal testing for Tay-Sachs disease and to terminate Tamar Ginsberg's pregnancy.  They asserted claims for wrongful birth, wrongful life, negligence, negligent hiring and medical malpractice.

After filing initial pleadings, the parties alerted the trial court to a significant distinction between New York law and New Jersey law with respect to plaintiffs' claims for wrongful birth.  A wrongful birth claim, premised on a plaintiff's lost opportunity to terminate a pregnancy when it is anticipated that the child will suffer from congenital defects, is recognized in the laws of both states.  See Canesi ex rel. Canesi v. Wilson, 158 N.J. 490, 501-03 (1999) (defining wrongful birth cause of action under New Jersey law); Schroeder ex rel. Schroeder v. Perkel, 87 N.J. 53, 66-68 (1981) (same); Becker v. Schwartz, 386 N.E.2d 807, 813 (N.Y. 1978) (defining wrongful birth cause of action under New York law); Foote v. Albany Med.

_____

[1]  Dr. Rubenstein, Durcan, HUMC and Genetics Service are collectively referred to as the "New Jersey defendants."

Ctr. Hosp., 944 N.E.2d 1111, 1113 (N.Y. 2011) (discussing limited remedies in wrongful birth actions under New York law).

However, the two states' laws substantially differ with respect to the damages that a plaintiff may recover in a wrongful birth case. New Jersey recognizes damages for "the emotional injury of the parents" and "the special medical expenses attributable to raising a child with a congenital impairment" but not damages for "the birth defect or congenital impairment itself." Canesi, supra, 158 N.J. at 502 (citing Schroeder, supra, 87 N.J. at 70; Berman ex rel. Berman v. Allan, 80 N.J. 421, 429-30, 433-34 (1979)). New York, in contrast, limits damages in wrongful birth cases to "the pecuniary expense which [the parents] have borne, and . . . must continue to bear, for the care and treatment of their infants" and New York specifically bars damages for "psychic or emotional harm" resulting from the birth of the child "in an impaired state." Becker, supra, 386 N.E.2d at 813; see also Alquijay ex rel. Alquijay v. St. Luke's-Roosevelt Hosp. Ctr., 473 N.E.2d 244, 245-46 (N.Y. 1984) (limiting damages to pecuniary expenses). That distinction between New Jersey and New York law gave rise to the choice-of-law issue at the heart of this case.

Before the trial court, Quest, Mount Sinai and the New Jersey defendants moved for a determination that New York law govern plaintiffs' claims against them. After authorizing

11

discovery on the choice-of-law dispute, the trial court denied defendants' motion to apply New York law. Significantly, the trial court considered itself constrained to apply the law of a single state to all of the claims and defenses asserted in this case. Acknowledging the conflict between New Jersey and New York law as applied to this case, the court reasoned that, for purposes of conflict-of-law analysis, New Jersey was the place of injury and, accordingly, New Jersey law was presumed to govern this case. The trial court further found that based on the contacts set forth in Restatement § 145, and the principles stated in Restatement § 6, the nexus between New York and the issues and parties in this case failed to overcome the presumption in favor of New Jersey law. Accordingly, the court held that New Jersey law governs plaintiffs' claims against all defendants.

An Appellate Division panel granted defendants' motions for leave to appeal and reversed the trial court's determination in a published opinion written by Judge Sabatino. Ginsberg ex rel. Ginsberg v. Quest Diagnostics, Inc., 441 N.J. Super. 198 (App. Div. 2015). The panel concurred with the trial court that New Jersey and New York law diverged in material respects. Id. at 223-24. It concluded, however, that New York, not New Jersey, constituted the place of injury for purposes of Restatement § 146. Id. at 227. The panel reasoned that New York was the

12

state of plaintiffs' domicile during Tamar Ginsberg's pregnancy, the state in which prenatal testing would have been conducted had plaintiffs been aware of Ari Ginsberg's status as a Tay-Sachs carrier, the state in which the pregnancy would likely have been terminated, and the state in which Abigail Ginsberg was born. Ibid. In accordance with Restatement § 146, the panel presumed that New York law governed this case.

The Appellate Division panel then considered the contacts set forth in Restatement § 145 and the principles stated in Restatement § 6 to determine whether New Jersey has a more significant relationship to the parties and issues than does the place of injury, New York. Id. at 228-29. In that regard, the panel rejected the trial court's assumption that the law of a single state must govern all of the issues in this lawsuit. Id. at 229. It recognized "functional advantages" to a defendant-by-defendant choice-of-law analysis in cases in which a plaintiff asserts claims based on "different facts occurring in different states at different times" and stated that a trial court should have the discretion to adopt a defendant-specific choice-of-law approach. Id. at 230. The panel further observed that a defendant-by-defendant approach is consonant with the principles stated in Restatement §§ 146, 145 and 6 and adopted as New Jersey's choice-of-law framework, and that it serves as a disincentive to tactical pleading by plaintiffs. See id. at

13

231-34. Noting that such an approach may be unworkable in some litigation, such as "a mammoth case involving defendants from dozens of states," the panel decided that it would be feasible in this action. Id. at 231-32.

Accordingly, the Appellate Division panel undertook separate choice-of-law analyses for the New Jersey and New York defendants. Weighing the contacts enumerated in Restatement § 145(2) and the principles of Restatement § 6, the panel found that the presumption in favor of New York law was overcome with regard to the New Jersey defendants. Id. at 237-43. It reached the opposite conclusion as to Quest and Mount Sinai and held that New York law governed the claims asserted against those defendants. Id. at 246.

We granted the New Jersey defendants' motion for leave to appeal, challenging the application of New Jersey law to the claims against them, and plaintiffs' cross-motion for leave to appeal, challenging the application of New York law to the claims against Quest and Mount Sinai. 223 N.J. 552 (2015); 223 N.J. 553 (2015); 224 N.J. 242 (2016).

### III.

We affirm the Appellate Division panel's determination, substantially for the reasons stated in Judge Sabatino's thoughtful and comprehensive opinion. The panel properly articulated the governing Restatement principles and applied

14

those principles to the facts presented in the record. Ginsberg, supra, 441 N.J. Super. at 223-49.[2] We add the following comments regarding defendant-by-defendant choice-of-law determinations under New Jersey's Restatement approach to conflicts-of-law issues in civil cases.

We concur with the panel that, in the majority of cases, a defendant-by-defendant analysis furthers the Restatement principles and provides the most equitable method of resolving choice-of-law questions. Id. at 229-32; see also Camp Jaycee, supra, 197 N.J. at 143; Restatement § 146. First, the central inquiry in the Restatement analysis -- whether the presumption in favor of the law of the place of injury is overcome under Restatement §§ 146, 145 and 6 -- focuses the court on the state's relationship to the parties, as well as its nexus to the issues, in the case. Camp Jaycee, supra, 197 N.J. at 143; see also Restatement § 145(1) (directing determination of which state has the "most significant relationship to the occurrence and the parties" under Restatement § 6). The term "parties"

---

[2] Before the trial court and the Appellate Division, the parties identified a conflict between New York and New Jersey law with respect to the statute of limitations. See Ginsberg, supra, 441 N.J. Super. at 225-26. The Appellate Division did not rule on the choice-of-law issue as it applied to the statute of limitations in light of the trial court's election not to address the issue and the parties' decision not to fully brief it in these appeals. Id. at 249. Accordingly, we do not address that issue here.

15

clearly includes not only the plaintiffs, but the defendants and any third-party defendants. As applied to defendants who reside in different states, the court's inquiry under Restatement § 145 may lead to different results.

Second, Restatement §§ 145(2) and 6, which set forth the contacts and factors guiding the determination of whether the presumption in favor of the law of the place of injury is overcome, suggest a defendant-specific analysis. Three of the four contacts identified in Restatement § 145(2) direct the court's attention to each defendant as an individual, not defendants in the aggregate. See Restatement § 145(2)(b) (considering place where conduct causing injury occurred); Restatement § 145(2)(c) (considering parties' domicil[e], residence, nationality, place of incorporation and place of business); Restatement § 145(2)(d) (considering place where relationship, if any, between parties is centered).

When a court applies the factors set forth in Restatement § 6(2), it necessarily considers the nexus between the state and each defendant. For example, a state's interest in deterring its own citizens from engaging in unlawful conduct may be a pertinent consideration under Restatement § 6(2)(b) (relevant policies of forum), Restatement § 6(2)(c) (relevant policies and interests of other interested states), and Restatement § 6(2)(e) (basic policies underlying particular field of law). Sensient

16

Colors Inc. v. Allstate Ins. Co., 193 N.J. 373, 384 (2008); Fu, supra, 160 N.J. at 130; Pfizer, Inc. v. Emp'rs Ins. of Wausau, 154 N.J. 187, 201 (1998); HM Holdings, Inc. v. Aetna Cas. & Sur. Co., 154 N.J. 208, 214 (1998). However, those policies may not apply if the defendant is domiciled elsewhere.

Similarly, a state may have a strong interest in ensuring that the expectations of its citizens as to the law that governs them are met under Restatement § 6(2)(d) (protection of justified expectations) and Restatement § 6(2)(f) (certainty, predictability and uniformity of result). Also, in some cases a state may have little or no interest in protecting the expectations of nonresident individuals and entities. In short, for different defendants, a court's analysis under Restatement §§ 145(2) and 6 can lead to different conclusions.

Third, we have long recognized that it is appropriate to analyze choice-of-law questions issue-by-issue, even if that approach complicates the trial. Camp Jaycee, supra, 197 N.J. at 143; Erny, supra, 171 N.J. at 95-96; Veazey v. Doremus, 103 N.J. 244, 248 (1986). A defendant-specific choice-of-law analysis does not diverge from our traditional approach to conflicts of laws or fundamentally alter the trial court's task.

In a case such as this, involving the law of only two states, a defendant-by-defendant approach is unlikely to prove impractical should the matter proceed to trial. By virtue of

17

the distinct claims asserted against several individuals and entities, the trial court would be required to instruct the jury about several different claims even if no choice-of-law issue had arisen. The application of New York law to some aspects of the case, and New Jersey law to others, need not unduly complicate the jury's determination. Assisted by seasoned counsel, the trial court will be in a position to incorporate the relevant law into a charge that will guide the jury as it considers the elements of each claim against each defendant.

We acknowledge that a defendant-by-defendant choice-of-law analysis is not feasible in every matter. In very complex cases with many defendants and multiple claims, a defendant-specific choice-of-law analysis may generate a jury charge that is unwieldy and unclear. We have held that an instruction that confuses the jury may compromise the fairness of the trial. See Komlodi v. Picciano, 217 N.J. 387, 409 (2014) (noting importance of appropriate and correct jury charges in civil cases); Scafidi v. Seiler, 119 N.J. 93, 101-02 (1990) (noting potential for proximate cause charge to mislead jury). In a complex case with many parties from different states, the trial court retains the discretion to decline a defendant-by-defendant approach and, utilizing a Restatement §§ 146, 145 and 6 analysis as described above, apply the law of a single state to claims asserted against all defendants.

18

Finally, we note the New Jersey defendants' concern that they could be liable for a disproportionate share of an award of damages for emotional harm, notwithstanding what they characterize as their minor roles in the events that gave rise to this action. Their concern is unfounded. In accordance with the New Jersey Comparative Negligence Act, in negligence and strict liability actions in which liability is disputed, the factfinder makes two determinations: (1) the assessment of damages, under N.J.S.A. 2A:15-5.2(a)(1), and (2) "[t]he extent, in the form of a percentage, of each party's negligence or fault," N.J.S.A. 2A:15-5.2(a)(2). The trial court is charged to "mold the judgment from the findings of fact made by the trier of fact." N.J.S.A. 2A:15-5.2(d).[3] Any verdict in plaintiffs' favor for emotional distress damages would be molded in accordance with the jury's allocation of fault to all defendants, and a New Jersey defendant's liability for non-economic damages would be limited in accordance with its percentage share of fault, under N.J.S.A. 2A:15-5.2(a)(2).

IV.

---

[3] New York law similarly provides for the molding of a verdict in cases involving the joint responsibility of tortfeasors. See N.Y. C.P.L.R. § 1601 (Consol. 1986).

19

The judgment of the Appellate Division is affirmed, and the matter is remanded to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.

20